Griggs v. Veghte.

---

JAMES L. GRIGGS, administrator with the will annexed of RYNIER H. VEGHTE, deceased,

v.

MARIA THERESA VEGHTE et al.

1. A trustee has a right, when his duty is involved in doubt, to ask and receive the aid and direction of a court of equity to the extent his necessities may require and the exigencies of the case demand. This aid should not be

Griggs *v.* Veghte.

sought when the events which must control are uncertain, or when some other tribunal should properly pass upon the question, or where no real difficulty is presented for solution. The court should be called on to decide and direct, not to counsel and advise.

2. Whether a widow is put to her election between her dower at law and the provisions of the will, depends on the intention of the testator in making such provision, as to whether it was in lieu of dower or not.

3. Every testator making a testamentary disposition of his property (if not within the provisions of the statute) is presumed to have framed his bequests and devises in view of the general rules which have been adopted by the courts for the construction of wills. But this presumption must give way, if it will defeat what otherwise clearly appears to have been the testator's intention.

4. When, from the whole will and the circumstances of the estate, it is manifest that the testator, in making provision therein for his widow, intended that the same was to be in lieu of dower, it is sufficient, in this state, to put her to her election between the provision made for her in the will and that made for her by law.

5. The general rule, that when a power of sale is given simply *ratione officii*, it may be exercised by any one who may succeed to the office, is recognized and enlarged by the act of 1888. *P. L. of 1888 p. 395.*

6. Interest does not commence to run on a general legacy until a year after the decease of the testator, and this notwithstanding the direction to pay the legacy as soon as convenient.

7. On a bequest of residuary personal estate, or any portion of it, in trust, to pay the interest or income to a legatee for life, with a gift of the principal over at his or her death, the interest which accrues thereon from the time of the testator's death, in the absence of any direction to accumulate, goes to the life tenant.

8. The term "state bonds" means, in this case, bonds of this state; "state stocks" means state bonds.

9. An executor or administrator, if an estate is solvent, is justified in erecting a tombstone or monument, suitable to the station in life and circumstances of the deceased, and reasonable with reference to the means of the estate. Such outlay comes properly within the items of funeral expenses.

---

On final hearing on bill and answer.

*Mr. James L. Griggs,* complainant, *pro se.*

*Mr. DeWitt Van Buskirk* and *Mr. Cortlandt Parker,* for the defendant, Mrs. Maria Theresa Veghte.

*Mr. R. V. Lindabury,* for the other defendants.

GREEN, V. C.

The bill is filed for a construction of the will of Rynier H. Veghte, late of the county of Somerset in this state. The testator died February 13th, 1889, seized of a valuable unencumbered farm of one hundred and seventy acres, on which he had resided, with his wife, for many years next before his death; he was also possessed of personal property valued at $25,500, with liabilities amounting to $9,000.

The testator had no children. His wife and his brothers, Henry and John, and several nephews and nieces, survived him. Another brother, Benjamin, died before the testator.

All the persons named in the will as executors renounced, and the complainant was appointed, by the orphans court of Somerset county, administrator with the will annexed on the 23d day of July, 1889, at which time the will was also admitted to probate.

By the bill the complainant asks directions as to his duty in the administration of the estate under the provisions of the will, and propounds a number of questions, some of which relate to the distribution of the estate after the termination of life interests, and which may not be effectively disposed of in the present suit, and others to which no present exigency requires an answer. "Where the duty of the trustee is involved in doubt, it is his right to ask and receive the aid and direction of a court of equity to the extent that his necessities may require." *Traphagen* v. *Levy, 18 Stew. Eq. 448.* This right does not, however, extend to the solution of propositions which do not present themselves as requiring any action by the trustee; or where the events which must control the rights of parties and the duties of the trustee have not transpired and are yet uncertain; or which should properly be submitted to some other tribunal; or which are so clear as to admit of no question. The court should be called on to decide and direct, not to counsel and advise. *Merlin* v. *Blagrave, 25 Beav. 139; Vanness's Exrs.* v. *Jacobus, 2 C. E. Gr. 153.*

The provisions of the will are:

*First.* That his just debts and the legal claims against his estate be paid.

*Second.* He gives and bequeaths to his wife such personal property as she "has acquired by gift, or purchase during coverture from her own money," and a legacy of $1,000, to be paid to her as soon as convenient after his decease.

*Third.* He authorizes and empowers his executors to sell all his real and personal estate, not before disposed of, either at public or private sale, as in their judgment will be most beneficial to his estate, and to make and execute all necessary conveyances for the same.

*Fourth.* He orders and directs his executors, after the payment of all debts, and the legacy to his wife, to take, from the balance remaining, one-third of the same and invest it in first-class bonds and mortgages or state bonds, as they may consider most desirable, and hold the same for the benefit of his wife, to pay over the interest arising from the same (less the necessary taxes and expenses) to her annually, or semi-annually, as the same may be received, during her natural life, and at her death to divide the principal of said one-third among certain nephews and nieces.

*Fifth.* He gives and bequeaths to the minister, elders and deacons of the First Reformed Church of Raritan his pew in said church, to be held by them for the use of his wife, so long as she may require the same, and when the possession of the said pew is not needed by her, he devises it to the said minister, elders and deacons for the benefit of the church.

Then follow certain specific legacies, and three pecuniary legacies amounting to $2,000.

*Twelfth.* The balance of his estate, after taking out the one-third for the use of his wife and paying the legacies, he orders divided into two equal parts or portions, one of which he orders his executors to put out at interest, on good bond and mortgage, or "good state stocks," and to pay the interest annually to his brother John during his natural life, and at his death to pay the principal sum to his nephews and nieces, share and share alike, excepting deductions from some for certain advancements.

*Thirteenth.* The other and remaining part he disposes of in the same way as the last, excepting that the interest is to be paid to his brother Henry for life.

Griggs v. Veghte.

The most important question presented is the twelfth, as follows: "Is the widow entitled to dower in the real estate of testator?" Or, rather, did the testator, in making the provision he has for the widow in his will, intend that she should take, as he provides, certain personal property, the legacy of $1,000, and the interest from the one-third of the proceeds of the real and personal estate, and also have her dower in his real estate? Or was the one in lieu of the other?

Of course, primarily, she is entitled to dower in the real estate —the law gives that to her—and it is a right which she is entitled to enforce if she so determines. But can she take her dower as the law provides, and also the provision of the will, or must she elect which of the two she will accept?

This is only to be settled by ascertaining what was the intention of the testator in making the provision he has for her, with reference to its being in lieu of or in addition to her dower. If he intended it in lieu thereof, she must choose between the two. If a testator declares in express words one way or the other, such declaration is conclusive. But, in the absence of express words, how is the intention to be ascertained? The legislature has by statute (*Rev. p. 322 § 16*) determined what, in a certain case, shall be considered as indicating an intention on the part of the testator to bar the dower of the widow, viz., that a devise to the wife, by a will duly executed to pass real estate, of any lands or real estate for her life or otherwise, without expressing whether such devise is intended to be in lieu or bar of dower or not, will put the widow to her election between the provision of the will or her dower by law. This is the only rule of interpretation laid down by the legislature on this subject.

Every testator making a testamentary disposition of his property, if not within the legislative provision, is presumed to have framed his bequests and devises in view of the general rules which have been adopted by the court for the construction of wills. *Davison* v. *Rake, 18 Stew. Eq. 767, 771.* But this presumption must give way, if it will defeat what otherwise clearly appears to have been the testator's intention. *Elwin* v. *Elwin,*

*8 Ves. 547; Law* v. *Thompson, 4 Russ. 92; Watkins* v. *Cheek, 2 Sim. & S. 199; Wheeler* v. *Ruthven, 74 N. Y. 431.*

It is impossible to reconcile the decisions of the English courts seeking to establish rules of interpretation of wills, as to whether provisions were or were not in lieu of dower, prior to the Dower act (*3 and 4 Wm. IV. c. 105*) taking effect.

Chancellor Vroom, in *Stark* v. *Hunton, Sax. 226,* says: " The policy of the great mass of the English cases appears to have been, to save the dower of the widow if possible; and for this purpose, numberless refinements and distinctions have been resorted to by the courts. Our policy, as manifested by our statute, is different." This was prior to the passage of the Dower act by the British parliament, the practical effect of which was, to render inoperative there the rules of interpretation which the courts had sought to lay down, and to change the policy referred to.

In this state it seems settled, that when, from the whole will and the circumstances of the estate, it is manifest that the testator, in making provision therein for his widow, intended that the same was to be in lieu of dower, it is sufficient to put her to her election between the provision made for her in the will and that made for her by law. *Stark* v. *Hunton, Sax. 226; Norris* v. *Clark, 2 Stock. 51; Colgate* v. *Colgate, 8 C. E. Gr. 372; Brokaw* v. *Brokaw, 14 Stew. Eq. 304; Stewart* v. *Stewart, 4 Stew. Eq. 398; Snook* v. *Snook, 16 Stew. Eq. 132.*

The plan of the testator in this case is, that his nephews and nieces are to be the ultimate beneficiaries of his estate, but before their enjoyment of it he devotes its income to the support of his wife and his two brothers. He makes provision for these life interests in a way which would be most easy of enjoyment. He was unwilling that they be put to the trouble or risk of tilling the soil, collecting rents, selling the property or investing capital, and directs the executors to sell the real and personal estate not specifically bequeathed—to turn everything into money, divide it into three trust funds, invest them as directed, collect the interest and pay that over to the life tenants. While there is not an absolute equality in the shares of the life tenants in the proceeds

of the estate, after the payment of the debts and legacies, the small discrepancy is in favor of the widow, and the division is practically into thirds. The trusts for the brothers are absolutely equal, and that for the wife is greater only by the fact that it is to be set up before the payment of the legacies, amounting to $2,000. With this exception, it is plain he intended that the bulk ·of the estate should be divided as equally as possible between the widow and the two brothers. It has been held that an inten-tion, manifested by the testator in his will, to make an equal ·division of his estate, not otherwise disposed of, between the wife ·and other beneficiaries, is inconsistent with the intention that she ·shall also take her dower right, on the theory that such taking ·of the dower would disturb and destroy the equality of distribu-tion of the estate contemplated. *Chalmers* v. *Storil, 2 Ves. & B. 224; Dickson* v. *Robinson, Jac. 503; Roberts* v. *Smith, 1 Sim. & S. 513; Goodfellow* v. *Goodfellow, 18 Beav. 356; Rey-nolds* v. *Torin, 1 Russ. 129.*

The intention of the testator that his whole estate, not other-wise disposed of, should be divided into three parts, equal in amount with the exception noted, would be disappointed and that practical equality destroyed, if the widow is to also take out one-third for her life or the value thereof. This would be the result if a sale was made subject to her right of dower. If, on the other hand, dower is to be set off to her by metes and bounds, as she claims in her answer should be done, the manifest inten-tion of the testator that the trusts for his brothers should be set up, not part at one time and part at another, but in their entirety ·at once, for their enjoyment during their lives, will be defeated, for the third so set off will, in such case, not fall at once within the power of sale, but will retain its character of real estate until ·her death, deferring until that event its conversion into money to be invested in the trust funds.

In carving out the share for his wife, he gives her the personal property she has acquired during coverture, a legacy of $1,000, and the interest of one-third of the net balance of the proceeds of the real and personal estate, to be set off to her before the payment of the pecuniary legacies to others. His personal estate

was ample to discharge all his debts and her legacy, and it is to be assumed that he took that fact into consideration. He knew, therefore, in making this last provision for her, that by it she would have the clear income of one-third of the value of the real estate. This is exactly in line with the theory of the law, that the just and proper interest of the wife in the real estate of the husband is a life estate in one-third thereof. The provision of the law seems to have been in the mind of the testator, and to have been his guide in making this provision. The proportion of the estate, and the period of its enjoyment, designated by him for his wife in the will are, so far as the real estate is concerned, the same as the law provides for her. It is evident that, in thus making the provision from the proceeds of his real estate in exact correspondence with the provision of law, he meant it to take the place of her dower right, to be in fact what the law provided for her, so arranged as to be capable of enjoyment, without any trouble or uncertainty.

But he gives her not only the equivalent of what the law assures to her, but a legacy of $1,000 and the income of the net proceeds of the personal estate. While the fact that what he gives her is greater than would be her dower in his real estate is not conclusive, it is entitled to weight, in ascertaining from the will, what was the intention of the testator in giving her such a share of his estate, with reference to its being in lieu of dower.

He devises to the minister, elders and deacons of the church at Raritan his pew in that church, for the use of his wife as long as she desires to use the same. This is real-estate. *Presbyterian Church v. Andruss, 1 Zab. 325 ; Bates v. Sparrell, 10 Mass. 324.* Reference is in no wise made to this as a devise under the statute, for it is not, if for no other reason, because it is not made to her directly (*Van Arsdale v. Van Arsdale, 2 Dutch. 404*), but as indicative of the current of the testator's thought, in dealing with his property, that he was making a disposition of it clear of his wife's dower right. It may be only a straw and entitled to but little weight, but it does indicate that he thought he had in the previous provisions so provided for his wife that she could have

no further claim, and therefore secures to her, so long as she may desire it, the use of the pew in the church.

It seems clear to my mind, that the testator intended the provisions he made for his wife to be in lieu of dower, and that she must elect between the provisions of the will and her dower right under the law.

"Has the complainant the power to sell the real estate of deceased at private sale?"

He was appointed administrator with the will annexed by the orphans court of Somerset county, all the executors named in the will having renounced.

The general rule is, when a power of sale is given simply *ratione officii*, it may be exercised by any one who may succeed to the office. *Weimar* v. *Fath, 14 Vr. 1; Drummond* v. *Jones, 17 Stew. Eq. 53; Jeralemon Admr.* v. *Van Ripen, 17 Stew. Eq. 299; Giberson* v. *Giberson, 16 Stew. Eq. 116.*

If any doubt could have existed as to the power of the complainant to sell the real estate, either at public or private sale, as directed by the will, under the general rule referred to, none can arise since the act of 1888. *P. L. of 1888 p. 395.*

"Is the widow entitled to interest upon her legacy of $1,000, given by the second paragraph of said will, from the death of the testator?

"Is the interest or income, given to the widow by the fourth paragraph, payable from the death of testator, or from the time when the amount of principal shall be ascertained by an accounting before the court?

"From what time is the interest (or income) payable to testator's brother John, under the twelfth paragraph?"

On the general legacy of $1,000 interest does not commence to accrue until a year after the decease of the testator. *2 Lead. Cas. Eq. *309, notes to Ashburner* v. *Maguire.* And this notwithstanding the direction to pay as soon as convenient. *Hoagland* v. *Schenck's Exrs., 1 Harr. 370; Sitwell* v. *Bernard, 6 Ves. 520; Webster* v. *Hale, 8 Ves. 410; Benson* v. *Maude, 6 Madd. 15; Bradner* v. *Faulkner, 12 N. Y. 472; Vernet* v. *Williams, 3 Dem. (N. Y.) Surr. 349.*

As to the other legacies, the widow and the two brothers are entitled to the income which has been received, or may accrue, from so much of the estate as may form the principal of the three trusts, from the time of the death of the testator.  On a bequest of the residuary personal estate, or any portion of it, in trust, to pay the interest or income to a legatee for life, with a gift of the principal over at his or her death, the interest which accrues thereon from the time of the death of the testator, in the absence of any direction to accumulate, goes to the life tenant.  *Green* v. *Green, 3 Stew. Eq. 451; Van Blarcom* v. *Dager, 4 Stew. Eq. 783; Davison* v. *Rake, 17 Stew. Eq. 506; S. C., 18 Stew. Eq. 767; Welsh* v. *Brown, 14 Vr. 37.*

The terms of the bequests, as well as the rule, limit the payments to the interest which actually accrues on the principal of the funds.

"Are the proceeds of the sale of the real estate to be included in the ' balance remaining' mentioned in the fourth paragraph of the will ?"

It has been before stated that the scheme of the will was, that the trust for the widow was to be set up from the proceeds of the real and personal estate ; otherwise the trust for the widow would only consist of a third of the personal estate after the payment of debts and her legacy of $1,000, which was certainly not the intention of the testator.

" What is meant by ' state bonds' and ' good state stocks?'"

The first expression occurs with reference to the trust for his wife, directing it to be invested in first-class bonds and mortgages, or " state bonds," which I consider refers to bonds of this state. It seemed to be conceded on the argument that there were no such securities as " state stocks."  My opinion is, the testator meant the same securities he had spoken of in connection with the other fund, viz., bonds of this state.

" Should the complainant erect a suitable tombstone or monument at the grave of the deceased with the funds of the estate ?"

The complainant would be justified in erecting a suitable tombstone or monument at the grave of the deceased with the funds of the estate.  If the estate is solvent, there seems to be

no doubt that a tombstone or monument, suitable to the station in life and circumstances of the deceased, and reasonable with reference to the means of the estate, comes properly within the items of funeral expenses. *Crosw. Ex. & Ad.* § *392; 3 Redf. Wills 246; 2 Wms. Ex. 968; Schoul. Ex.* § *422; Woern. Am. L. Ad. 761; Wood* v. *Vandenburgh, 6 Paige 277; Ferrin* v. *Myrick, 41 N. Y. 315; Cornwell* v. *Dick, 2 Redf. 87; Owens* v. *Bloomer, 14 Hun 296; Fairman's Appeal, 30 Conn. 205; Crapo* v. *Armstrong, 61 Iowa 697.*

The other questions fall within the classes mentioned as those which the necessities of the trustee do not require the court at present to consider or decide.