This is a controversy between husband and wife over the dead body of their son who died on June 14th, 1910, aged about twelve years. At the time of his death he was with his father, the defendant, who was residing at Plainfield, in Union county; the mother, the complainant, was then a resident of the State of New York; they had separated many years before. After their separation the child was awarded to the mother by the New York courts; he was surreptitiously taken by the father and brought from the State of New York into the State of New Jersey several years ago. The pleadings disclose irreconcilable differences between the parents, which exist to the present time. At the time of the death of the child its body was placed in a *Page 489 
receiving vault in a cemetery at Plainfield, where it has remained ever since; no arrangements for its burial or other final disposition have ever been made by the parties.
The mother now brings this suit for the purpose of obtaining the custody of the body and committing it to sepulture in a family burial plot in which she has an interest in a cemetery either at Rye, New York, or at Mt. Auburn, Massachusetts. She states, however, in her bill that she would be willing to have the child interred in the Plainfield cemetery, in whose receiving vault it now lies.
The questions raised were these — first, whether this court had any jurisdiction in the premises; second, whether this court could, or if it could, whether it would direct the burial of this child to be had in a foreign state, and third, whether it was not the right and duty of the father, without supervision or advice, to bury the child wheresoever he might choose.
These questions all relate to the original burial of the dead body and not to its exhumation or removal to another place of sepulture. We get little light on the subject from the cases in our own state, which seem to settle three propositions — first, that there is no property right in a dead body; second, that after the body shall have been buried it is in the custody of the law; third, that the removal of a body once buried is subject to the jurisdiction of this court. Peters v. Peters, 43 N.J. Eq.(16 Stew.) 140; Smith v. Shepherd, 64 N.J. Eq. (19 Dick.) 401; Toppin v.Moriarity, 59 N.J. Eq. (14 Dick.) 115.
An examination of the adjudged cases generally leads to the conclusion that there is a substantial agreement of judicial thought on the following propositions, touching the original burial of a dead body; namely, first, the duty is cast in the first instance upon the person in whose house a man dies to carry the body to the grave, covered, and to bury it decently at his own expense, unless some one having a more urgent duty or a greater right shall intervene. Patterson v. Patterson,59 N.Y. 583; Rex v. Stewart, 12 Ad. E. 773; second, the person upon whom this right and duty next falls is prima facie the personal representative; a duty is cast by law upon the executor or administrator to see to it that the body shall have a decent burial, and for the purpose *Page 490 
of performing his duty he is entitled to its custody. By our statute he is allowed his reasonable expenses in that behalf as a preferred claim against the estate. Toppin v. Moriarity, 59 N.J. Eq. (14 Dick.) 115; 2Wms. Ex. 165; Williams v. Williams, 20 C. D. 659; 51 L. J. Ch. 385. In Indiana and South Carolina, however, the next of kin are given the paramount right; third, in case there shall be no personal representative, or he should see fit not to employ himself in the matter, the duty and right then devolves upon the next of kin to the deceased in the order of their kinship; that is to say, of the whole body comprising the next of kin those nearest of kin shall have the strongest right. Pettigrew v. Pettigrew, 207 Pa. 313; 64 L.R.A. 179;56 Atl. Rep. 878; fourth, this, however, is not an invariable rule, because a more distant relative or even a friend not connected by ties of blood may have a superior right under exceptional circumstances to one nearer of kin, as was held in Scott v. Riley, 16 Phil. (Pa.) 106. And, generally speaking, the surviving husband or wife has the right to control the burial of the deceased spouse, as against the next of kin. Larson v. Chase, 47 Minn. 307;28 Am. St. Rep. 370; fifth, all the foregoing rules must, however, be subject in their application to the jurisdiction of this court whenever the same shall be properly invoked by the parties in interest. Perhaps it is stating their effect too broadly to call them rules; but they are guides to be considered and applied as the case may require when the occasion arises. it would be embarrassing in many cases to find that they were hard and fast rules and binding strictly on the conscience of the court because the court might find its duty to lie entirely beyond their scope. Each case must be dealt with separately, and in accordance with its own circumstances. The whole situation is admirably summed up in the opinion in Pierce v. Swan Point Cemetery, 10 R.I. 227; 14 Am. Rep. 667. It is there said: "Although, as we have said, the body is not property in the usual recognized sense of the word, yet we may consider it as a sort of quasi property, to which certain persons may have rights, as they have duties to perform towards it, arising out of our common humanity. But the person having charge of it cannot be considered as the owner of it in any sense whatever; he holds it only as a sacred trust for the benefit of all *Page 491 
who may from family or friendship have an interest in it, and we think that a court of equity may well regulate it as such, and change the custody if improperly managed. So, in the case of custody of children, certain persons are prima facie entitled to their custody, yet the court will interfere and regulate it. We think these analogies furnish a rule for such a case, and one which will probably do most complete justice, as the court could always interfere in the case if improper conduct, e. g., preventing other relatives from visiting the place for the purpose of indulgence of feeling or testifying their respect or affection for the deceased." One other consideration needs to be mentioned, and that is the interest of the public. It is to the interest of the public that dead bodies should be interred decently and in order and as soon as the circumstances of the case will permit; the public morals, the public health, the instincts of our common humanity, the customs of our people all demand that burials shall be so conducted.
Under ordinary circumstances it would be the duty of the father, as next of kin and as the natural guardian of a deceased infant, to bury it and to meet all the expenses appertaining thereto, and he would have the corresponding right of possession for that purpose. It was so held inBurney v. Children's Hospital, 169 Mass. 57. It is quite likely that such a disposition of the matter would generally be practicable and satisfactory. But the circumstances here are of such a character as to preclude any such disposition. The parents have assumed a position of intense hostility to each other; and there is little or no prospect of any agreement between them which will observe the proprieties or be considered more than temporarily binding on them.
These considerations lead me to the conclusion that the burial of this child should be accomplished under the direction of this court with a view to compliance with the customs with which we are familiar, and the observance of the decencies and proprieties of civilized life. The burial must be in the cemetery at Plainfield, in the receiving vault of which the body now lies. I am constrained to deny the application of the mother to permit the burial to take place in a foreign state for two reasons. The first is that she has by her bill signified her consent that the burial *Page 492 
shall take place in New Jersey; the other is that this court would have no means of enforcing its decree touching the matters in dispute after the body was once beyond the boundary line of the state. It might be taken to New York or Massachusetts, or it might be concealed and so placed beyond the jurisdiction of this court. The burial must be in a plot of land to be provided by the father, but subject as to location and suitableness to the approval of a master of this court, who will be appointed for the purpose by the decree. His duty will be to see that the provisions of this decree touching the interment shall be carried out, and that no indecorous proceeding shall be had at the burial. In case a religious service should be desired at the grave, the same must be conducted under the supervision of the master, who will see to it that no unseemly or unbecoming acts are committed by the parties. The expense of opening and closing the grave, and such other expenses as are incident to the occasion, must be borne by the father, and if he shall fail to make provision therefor within fifteen days after the service of a copy of the decree on him, further application may be made on behalf of the mother for such relief as she may be thereupon entitled to. The decree will provide that after the burial shall have taken place the body of no other person shall be interred in the plot, without the allowance of this court, and that no monument, mausoleum or other erection shall be made upon the plot without the like allowance. These matters, and any other matters that pertain to the burial plot, will have to be made the subject of an independent application to the court.
The decree will provide that the parents shall have equal rights of access to the grave; disputes concerning the same will be settled upon application to the court.
 *Page 592