16 N.J. Super. 285 (1951)
84 A.2d 485
FIDELITY UNION TRUST COMPANY, A NEW JERSEY CORPORATION, ARTHUR E.C. HELLER AND RUPERT B. LOWE, AS EXECUTORS AND TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF PAUL E. HELLER, DECEASED, PLAINTIFFS,
v.
ARTHUR E.C. HELLER, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 1, 1951.
*287 Mr. Irving Riker for the plaintiffs (Messrs. Riker, Emery & Danzig, attorneys).
Mr. Frederick Frelinghuysen for the defendants Arthur E.C. Heller, Ruth Heller Lowe, et als. (Messrs. Pitney, Hardin & Ward, attorneys).
Mr. James W. Hart for the defendant Martha Henry.
Mr. Earle Ogden Bennett for the defendant Frances Ward (Messrs. Bailey, Schenck & Bennett, attorneys).
*288 Mr. George D. McLaughlin for the defendant Constance Heller Henry.
Mr. Aaron Marder for the defendant Elaine Heller Blount.
FREUND, J.S.C.
Paul E. Heller executed his last will and testament on February 12, 1935. In the second article thereof, he expressed the desire that his body rest in a mausoleum in Fairmount Cemetery in the City of Newark, directed his executors to erect the mausoleum at a cost of $25,000 upon a plot in the cemetery, and provided for the interment therein of both deceased and surviving members of his family. Elsewhere in the will he set up a trust fund for the care and maintenance of the plot and mausoleum. Seven years later, on February 16, 1942, he bought a plot in another cemetery, Mount Pleasant Cemetery, in Newark, and secured from that cemetery association its approval to erect a mausoleum thereon. From correspondence in his files it appears that from 1942 to 1944 he negotiated for the erection of the mausoleum and procured elaborate sketches, blueprints and estimates, but material shortages during the war years prevented him from completing his project. He died on February 26, 1948, without having changed his will. His body has been placed in the receiving vault of Fairmount Cemetery, awaiting determination of the place of final interment.
The plaintiffs, executors and trustees under the will filed this proceeding for instructions as to (1) the burial of the testator, (2) the erection of a mausoleum, (3) the removal of the bodies of deceased members of the Heller family, and (4) the trust for the maintenance of the cemetery plot.
The facts are undisputed and have been stipulated. The testator was unmarried. His closest surviving next-of-kin are nephews and nieces. The bodies of nine members of his family, including his parents and brothers, are buried in the Heller family plot in Fairmount Cemetery, which is too small to accommodate a mausoleum. Another plot suitable for a mausoleum could be procured in Fairmount Cemetery, but *289 the next-of-kin of the deceased persons all object to moving the bodies now interred in the family plot. The plot in Mount Pleasant Cemetery acquired by the decedent is adequate for a mausoleum, but since the bodies now interred in Fairmount Cemetery would not be moved and the surviving members of his family do not wish to be interred in the mausoleum, it would contain only the remains of the decedent. All of the testator's next-of-kin, with but one exception, desire that he be interred, and, if erected, the mausoleum be in Mount Pleasant Cemetery. The single objector urges that if a mausoleum is erected, it should be in Fairmount Cemetery.
Paragraph Two of the will reads as follows:
"SECOND: I desire that my body shall rest in a mausoleum in Fairmount Cemetery in the City of Newark, New Jersey. In the event I shall die without having erected a mausoleum in said cemetery, I direct my executor to build a mausoleum at a cost of approximately Twenty Five Thousand ($25,000.00) Dollars upon my plot, if I have acquired one in my lifetime for that purpose, or if I shall die without having acquired one, then upon the present family plot, or if that be impossible or undesirable, then upon such desirable plot in the cemetery as my executors may choose. The cost of the plot, if one is to be acquired, is to be borne by my estate out of the principal thereof in addition to the sum which I have appointed to be spent for the erection of a mausoleum. I direct my executors to cause my body to be interred therein and, pending the erection thereof, my body shall be cared for in the receiving vault of the cemetery. I also direct that my executors shall cause to be interred therein the bodies of my father, my mother and of all the members of my family, who are named in this will as beneficiaries, desiring interment in it. My father and mother having predeceased me and being now buried in the cemetery, the expense of removing their bodies to the mausoleum shall be borne by my estate."
This proceeding is not for the construction of decedent's will, for the will itself is unambiguous. Generally, the facts and circumstances considered in the construction of a will are those which existed when the will was made and not subsequent events. 2 Page on Wills (Lifetime ed.), sec. 920, p. 816. Here, the plaintiffs seek the instruction of the court whether to comply with the clear and specific provisions of *290 the will or whether to depart from strict compliance. The issues call for discussion of the following legal questions: What is the nature of the right of a decedent respecting the disposition of his body after death? What is the duty of the executor in that respect?
It is settled that there is no property right in a dead body in a strict sense or ordinary use of the term. Toppin v. Moriarty, 59 N.J. Eq. 115 (Ch. 1899); DeFestetics v. deFestetics, 79 N.J. Eq. 488 (Ch. 1911); Glatzer v. Dinerman, 142 N.J. Eq. 88 (Ch. 1948). It is not part of the estate of the decedent. Some states, like New York, have statutory provisions which specifically confer upon a person the right to direct the manner in which his body shall be disposed of. Penal Law, N.Y., sec. 2210. In re Johnson's Estate, 7 N.Y.S.2d 81, 169 Misc. 215 (Surr. 1938); In re Eichner's Estate, 18 N.Y.S.2d 573, 173 Misc. 644 (Surr. 1940). This right is merely a personal right and is not regarded as testamentary in character. The general rule is that although not essentially testamentary, and legal compulsion may not attach to them, the wishes or directions of a decedent as to his interment are entitled to respectful consideration and have been allowed great weight. "It always has been, and ever will continue to be, the duty of courts to see to it that the expressed wish of one, as to his final resting place, shall, so far as it is possible, be carried out." Thompson v. Deeds, 93 Iowa 228, 61 N.W. 842, 35 L.R.A. 56 (Sup. 1895); Pettigrew v. Pettigrew, 207 Pa. 313, 56 A. 878, 64 L.R.A. 179 (Sup. 1904); Wilson v. Read, 74 N.H. 322, 68 A. 37, 16 L.R.A., N.S. 332 (Sup. 1907); Wood v. E.R. Butterworth & Sons, 65 Wash. 344, 118 Pac. 212 (Sup. 1911); Yome v. Gorman, 242 N.Y. 395, 152 N.E. 126, 47 A.L.R. 1165 (Ct. App. 1926); Burnett v. Surratt, 67 S.W.2d 1041 (Tex. App. 1934); Jackson, Law of Cadavers (1937), page 49 et seq.; 25 C.J.S., Dead Bodies, sec. 3, p. 1018.
There has not come to my attention any reported case in this State dealing with the effect of a specific direction in a will regarding disposition of decedent's body, but I am *291 convinced that we adhere to the general rule, for in Toppin v. Moriarty, supra, Vice-Chancellor Stevens examined the authorities and effectuated the verbal deathbed request of a decedent as to place of burial.
Revocation of the direction in a will with respect to burial may be accomplished without the execution of "another will or codicil in writing or other writing declaring the alteration executed in the manner in which written wills are required by law to be executed," as prescribed in R.S. 3:2-5. In re Scheck's Estate, 14 N.Y.S.2d 946, 172 Misc. 236 (Surr. 1939); Wales v. Wales, 190 A. 109 (Ch. Del. 1936). I am in accord with the views expounded by Surrogate Wingate in the Scheck case, supra, a case involving the principles pertinent here. There, the decedent in her will provided that her body should be buried in Palestine. Unaware of these directions, her children had her remains interred in a cemetery in New York, where she died, and they were unanimous in their wish that her body be left undisturbed. Affidavits were submitted tending to establish that when the will was executed, the decedent was living with her second husband in Palestine and was making payments on a burial plot in that country; that she later became estranged from him and returned here, after which she discontinued payments on the cemetery plot in Palestine and made regular payments on the plot in which her body was later buried, and that subsequent to the execution of her will and up to the time of her death she expressed the wish to be buried here. The court, ruling that the testator's right of disposition of her body was not testamentary, continued:
"An inevitable sequence of this conception is the right of a particular decedent, from time to time in his discretion, to vary the directions respecting disposal of his remains, with the result that the inquiry of the court must be directed to the ascertainment of the latest expression of wish by the testator on the subject.
Whereas, however, the question is merely one of proof, a demonstration, as in the present case, that a formal and deliberate expression has been made, raises an inference of a continuance of the indicated desire which may not lightly be overcome. * * * That *292 the primary obligation * * * is to effectuate the expressed wishes of a testator insofar as this process involves no infringement of positive rules of law, is axiomatic. * * * It follows, in the present situation, that reversal of the formally expressed wishes of this decedent respecting disposal of her remains is permissible only upon a clear and convincing demonstration by competent and credible testimony, that such was in fact her desire."
And in Wales v. Wales, supra, the Chancellor said:
"It is not the law that the wishes of the deceased concerning the place of his burial are to be gathered exclusively from a formally executed will, and that, if there is no will to reveal the decedent's wishes, the law can take no cognizance of his desires. Oral statements made by the deceased of his wishes in such matters are receivable by the courts and where satisfactorily shown are accorded the full weight of their significance in the light of all the facts attending their utterance."
One of the first duties of an executor is to attend to the decent and proper burial of the decedent. Toppin v. Moriarty, supra; DeFestetics v. de Festetics, supra. While a court cannot direct executors to perform their duties in a manner contrary to the will, even when all parties concerned are in court competent to and do consent, Holden v. Morgan, 115 N.J. Eq. 59 (Ch. 1933), a court may relieve an executor from the duty to carry out the provision in a will if the best interests of the estate are served thereby, Wilber v. Asbury Park National Bank & Trust Co., 142 N.J. Eq. 99 (Ch. 1948), affirmed 2 N.J. 167 (1949). An executor has the right to apply to the courts for direction and guidance in the performance of the duties of his office or trust when he is in doubt as to the extent of his powers and duties or as to the proper manner in which to proceed. Baxter v. Baxter, 43 N.J. Eq. 82 (Ch. 1887), affirmed 44 N.J. Eq. 298 (E. & A. 1888); Griggs v. Veghte, 47 N.J. Eq. 179 (Ch. 1890).
After interment a body is in the custody of the law, and removal or disturbance of such body is subject to the jurisdiction of a court of equity; but the power should not be exercised unless it be clearly shown that good cause and urgent necessity for such action exists. Perth Amboy Gas *293 Light Co. v. Kilek, 102 N.J. Eq. 588 (E. & A. 1928); Peters v. Peters, 43 N.J. Eq. 140 (Ch. 1887); Smith v. Shepherd, 64 N.J. Eq. 401 (Ch. 1903).
Applying the foregoing principles to the facts in this case, I am satisfied that the testator by his conduct and acts subsequent to the execution of his will changed his mind about interment in Fairmount Cemetery and abandoned the plan for the erection of a mausoleum there. The second article of the will was specifically limited to Fairmount Cemetery and provided for the erection of a mausoleum on one of three plots in that cemetery: (1) on a plot bought by the decedent, (2) on the family plot or, if that were impossible, (3) on a plot purchased by the executors. No plot in Fairmount Cemetery was purchased by the decedent or his executors, and it is impossible to erect a mausoleum on the family plot. The testator by the purchase of a plot in Mount Pleasant Cemetery and the negotiations for a mausoleum there indicated his intention to abandon the provisions of the will in so far as they related to Fairmount Cemetery, and a preference to be interred in Mount Pleasant Cemetery. The executors have ascertained that all but one of the next-of-kin desire that the decedent should be interred in Mount Pleasant Cemetery. Accordingly, the executors may be relieved from carrying out the directions of the second article of the will; they may erect a mausoleum in Mount Pleasant Cemetery at a cost not to exceed the sum stipulated in the will. Canfield v. Canfield, 62 N.J. Eq. 578 (Ch. 1901). The court is not directing them to erect a mausoleum; it is merely relieving them of performance of the directions of the second article of the will, and the estate should be treated as though the will made no provision regarding interment. In attending to the decent and proper interment of the remains of the decedent in a manner suitable to his estate and station in life, a reasonable and judicious expenditure for this purpose, including a mausoleum and perpetual care of the same, has been held to be properly allowed. Pratt v. Douglas, 38 N.J. Eq. 516 (E. & A. 1884); Griggs v. Veghte, supra; Zipper v. McCutcheon, *294 9 N.J. Misc. 164 (Sup. Ct. 1931), affirmed 109 N.J.L. 274 (E. & A. 1932); Bank of Montclair v. McCutcheon, 110 N.J. Eq. 539 (Prerog. 1932); In re Gilchrist, 110 N.J. Eq. 666 (Prerog. 1925).
Paragraph nine of the decedent's will provides as follows:
"(a) During the term of the trust to expend annually the sum of TWO HUNDRED FIFTY DOLLARS ($250.00) for the care and decoration of the cemetery plot upon which is erected my mausoleum, it being my purpose that there shall be flower decorations for each Easter Day and Decoration Day."
This provision for flower decorations will apply to any plot where the decedent is interred.
Section (e) of paragraph nine provides in part as follows:
"(e) Upon the death of the last survivor of my said brother * * *, my said trustees shall distribute the corpus of the trust property as follows: TWENTY FIVE HUNDRED DOLLARS ($2,500.00) to Fairmount Cemetery Association, in trust, to invest the same and to apply the net annual income thereof for the perpetual care, decoration and maintenance of my cemetery plot and the mausoleum erected thereon; and I charge the said cemetery association specifically with the duty of appropriately decorating the said plot with flowers upon each recurring Easter Day and Decoration Day; * * *."
The sum of $2,500 was to be paid to Fairmount Cemetery Association not as a gift or legacy, but as a trust fund for investment, the income to be applied for perpetual care and maintenance. That cemetery was designated by the decedent as trustee because he then contemplated interment there. He hardly would have appointed it as trustee for the care and maintenance of a plot in another cemetery, and indeed the cemetery association would have no authority to serve in such a capacity, R.S. 8:2-33. If the decedent is interred in Mount Pleasant Cemetery, Fairmount Cemetery will be disqualified to serve as trustee, and application may be made to the court for the appointment of an appropriate substituted trustee.
Judgment in accordance with this opinion may be submitted.