**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0443-17T4

IN THE MATTER OF THE
ESTATE OF VALMORE J.
FORGETT, JR.,
     Deceased.

_____

Argued April 2, 2019 – Decided September 3, 2019

Before Judges Yannotti, Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. P-183801.

Anthony C. Di Lella argued the cause for appellant Lisa Farina (Anthony C. Di Lella, attorney; Anthony C. Di Lella and Anthony Scordo, III, on the briefs).

Michael John Martelo argued the cause for respondent Estate of Valmore J. Forgett, Jr. (Post Polak, PA, attorneys; David L. Epstein, of counsel; Michael John Martelo, on the brief).

Geoffrey D. Mueller, LLC, attorney for respondent Valmore J. Forgett, III, joins in the brief of respondent the Estate of Valmore J. Forgett, Jr.

PER CURIAM

In this dispute over the distribution of the decedent Valmore J. Forgett Jr.'s assets, Lisa Farina, a general judgment creditor of the estate, appeals from the Chancery Division's August 17, 2017 order approving the final accounting filed by the decedent's executors and awarding attorney's fees and executors' commissions. She also appeals from earlier orders entered by the trial court in 2015, dismissing all but two of the exceptions she filed to a prior accounting, and in 2016 dismissing her complaint to remove the Estate's co-executors. Farina's exceptions and arguments related to the trial court's 2004 approval of a stock purchase agreement (SPA) between the Estate and one of the co-executors, the decedent's son, and her contention that her claim had priority over all creditors.

On appeal, Farina argues that the trial court erred by failing to recognize her claim's priority over all of the Estate's other creditors, including the Internal Revenue Service (IRS); by rejecting her claim that the SPA should be set aside because it was the result of a breach of a fiduciary duty and fraud; and, by concluding that she was "bound by the court approval of the [SPA]." Finally, Farina challenges the trial court's award of executors' commissions and attorneys fees because they were incurred in furtherance of the alleged breach of a fiduciary duty. We find no merit to these contentions and affirm, substantially

2

for the reasons expressed by the judges who addressed Farina's claims in their written and oral decisions that accompanied the orders under appeal.

The nature of Farina's challenges require that we recite in detail the long and tortuous history of her pursuit of payment from the Estate as derived from the record. The decedent died in 2002 and his will named his son, Valmore J. Forgett III (Val III), and a friend, Raymond Bentley, as co-executors of his estate.

During his lifetime, the decedent owned and operated Service Group, Ltd. (Service Group) which had several subsidiaries, including Navy Arms Company (Navy Arms). At one point, Gibbs Rifle Company, Inc. (Gibbs), which was owned in part by Val III, was a selling agent for Navy Arms. The decedent also owned a commercial building in Union City, an investment account with PNC Bank (PNC), and a loan receivable from Gibbs. At the time of his death, the decedent's liabilities included loans owed to PNC that were secured by liquid assets and by a mortgage on the Union City property, and personal income taxes for 2002.

In early 2003, Citrin Cooperman & Company, LLP (Citrin) prepared financial statements for Service Group for the six-month period ending in

December 2002. The report stated that the company incurred net losses of about $712,000 and that its liabilities exceeded the total assets by $1,771,000.

Prior to the decedent's demise, in 2000, Farina was an employee of Navy Arms. She filed a workers' compensation claim against her employer after falling in an uninsured parking lot owned by the decedent individually. She filed her complaint against decedent on October 4, 2002 and amended it to include the Estate following his death. On May 27, 2005, she obtained a judgment of $230,850 against the Estate.

In addition to Farina, the decedent's second wife, Eleanor Seifert, also initially maintained a claim against the Estate. Prior to their marriage, in 1997 Seifert and the decedent signed a prenuptial agreement, which contained a provision that provided Seifert would receive "$50,000 per year" as continued spousal support upon the decedent's passing. In May 2003, Seifert filed a complaint against Val III and the Estate, alleging that Val III was in breach of his fiduciary duty and was engaged in self-dealing, causing the Estate "to be without funds with which to meet its obligations . . . ." In November 2003, the Estate, Seifert, and Val III entered into a settlement agreement in which Val III individually agreed to settle Seifert's claim against him and the Estate for $400,000. In response to a motion filed by Seifert, on January 23, 2004, Judge

Burrell I. Humphreys approved the settlement after he found that there was no opposition to the settlement and it was reasonable.

Prior to Judge Humphreys' approval of the settlement agreement, Val III pursued the SPA allegedly in order to satisfy a claim against the Estate made by PNC. At the time, Service Group's and Navy Arms' obligations to PNC that the decedent had personally guaranteed were in default and the Estate attempted to find a buyer for Navy Arms. PNC had commenced two actions, one seeking to foreclose its mortgage on the Union City property and the other seeking to take inventory and assets from Navy Arms in which it had a security interest. When the Estate could not find a buyer for Navy Arms, Val III offered to purchase the stock for nominal value and assume the debt owed to PNC. The SPA provided that Val III would pay the Estate $100 for the Service Group shares as well as pay PNC "the sum of all principal, accrued interest and expenses thereon in full satisfaction . . . ."

On January 2, 2004, Bentley filed a complaint seeking "advice and direction from the court approving" the Estate's sale of its shares in Service Group to Val III. The complaint disclosed the allegations made by Seifert in her complaint and that the settlement of those claims was pending at the time. It also referred to the poor financial circumstances of the Estate. A copy of the

5

SPA was attached to the complaint, which was served on Farina, whose claim was also pending at that time. Farina did not challenge the proposed SPA. Judge Humphreys approved the SPA on March 8, 2004, after he noted that no opposition papers were filed by any party. The judge signed an order stating "this order close[d] the case in the Chancery Division."

In addition to having Val III through the SPA assume the then-approximately $100,000 debt owed to PNC, the Estate sought approval for the sale of the Union City property, which was encumbered by a mortgage held by PNC. Farina received notice of the proposed sale and the application for approval. She did not file any opposition to the application.

Judge Margaret Mary McVeigh entered an order approving the sale on June 22, 2004. The property was sold for $611,000 on August 12, 2004. The net proceeds totaled $561,494.29, with $130,798.03 being paid to PNC to discharge the mortgage even though Val III assumed that debt. The Estate applied the amount it paid to PNC from the sale to reduce the amount payable to Val III as the assignee of Seifert's claims that the Estate valued to be in excess of $1,000,000. After the payment to PNC, the Estate netted approximately $400,000 from the sale.

A-0443-17T4

As to amount owed to the IRS, the Estate retained Citrin in October 2003 to prepare and file the decedent's 2002 tax returns. Those returns indicated that $33,050 was owed to the State on taxable income of $757,090, and $127,383 to the IRS on taxable income of $762,939. At the time of filing, Citrin found that the Estate did not have sufficient assets to pay the outstanding amount owed for taxes.

In 2005, the Estate hired Wiss & Company, LLP (Wiss) to provide a second opinion about whether the losses and negative financial condition of Service Group would impact the income taxes owed to the State and IRS. Wiss concluded that the financial condition of Service Group as of December 2002 rendered a $2,434,463 loan owed to decedent by the company worthless. On December 15, 2002, Wiss prepared an amended state income tax return, showing no taxable income due to the loss of the written-off loan. It calculated that the Estate was entitled to a state income tax refund of $13,050. Ultimately, the State issued a refund of $8,229.83.

Wiss filed an amended federal income tax return that also showed no taxable income because of the uncollectable loan. It claimed that the Estate was entitled to a refund of $28,827. The IRS disagreed and claimed the Estate owed $127,383, as previously calculated, not including penalties or interest.

7

Neither PNC, the IRS, nor Farina took any action between 2005 and 2010 towards collecting any of the amounts owed to them by the Estate.

Against this backdrop, in 2011, Farina began to pursue the collection of the judgment she obtained against the Estate in 2005. After receiving documents in response to an information subpoena issued to the Estate, in December 2012, Farina filed a complaint seeking damages and equitable relief against Val III, Bentley, and the Estate's attorneys for their alleged roles in diverting assets from the Estate.

Among the relief she sought in her complaint, Farina demanded that the 2004 approval of the SPA be set aside as it was a fraudulent conveyance under N.J.S.A. 25:2-25 and that her judgment had priority over other the claims of other creditors. However, after Judge McVeigh entered an order to show cause on December 27, 2012, Farina voluntarily dismissed the complaint.

Despite the dismissal, the judge directed the Estate to file a verified complaint for judgment of insolvency and instructions. At the time, the Estate owed money to the IRS, Farina, and Val III, the latter of whom had already withdrawn from participating as a co-executor in matters that were central to the Estate's administration.

A-0443-17T4

The Estate filed its complaint on April 30, 2013 seeking approval of its accounting, instructions as to certain issues, and an award of administrative, accounting and counsel fees. Farina responded with her exceptions to the accounting by again alleging that Val III breached his fiduciary duty and that he and the Estate conspired to commit fraud in order to divert funds. Farina also alleged that her claim against the Estate had priority because she filed the complaint upon which her judgment against the Estate was based before the decedent's death.

In its response to Farina's contentions, the Estate maintained that Farina and her counsel had an open offer to examine its files and asserted that Farina was notified when the Estate applied to the court for approval of the SPA but she never responded or otherwise objected to the application. Farina asserted that she did not object to the application for approval because she was told that the SPA would not affect the Estate's ability to pay her and she relied on such statements. She also claimed she did not receive all the information requested from the Estate regarding its ability to pay.

On May 12, 2014, Farina filed a motion for partial summary judgment seeking an adjudication that her claim was superior to the claims of other creditors and an order directing Val III to pay his obligation to the Estate. In a

9

supporting certification, Farina's counsel asserted that his client was first informed that there may not be enough funds to pay her claim in 2011.

After considering the parties' oral arguments in July 2014, on January 29, 2015, Judge McVeigh granted the Estate's motion to dismiss Farina's exceptions and on April 30, 2015, dismissed the exceptions with prejudice, except for two of them.[1] In her accompanying written decision, the judge found that under Rule 4:50, there was no legal basis established and no facts provided to substantiate allegations that in 2004 Judge Humphreys abused his discretion or was misled when he approved the SPA. She found that he properly considered all issues before him during his consideration of Val III's settlement with Seifert and the SPA. Judge McVeigh specifically noted that there were no expert reports supporting any allegation made by Farina regarding the financial condition of the Estate or her claim of fraud. Judge McVeigh denied a subsequent motion for reconsideration and reserved decision on the Estate's request for an interim award of counsel fees in the amount of $210,088.

---

[1] The two exceptions related to the Estate's decision to charge Val III's claim with the amount it paid to PNC rather than require him to pay the amount himself, and whether an administrative claim for reimbursement he made was valid.

10

On August 14, 2015, Judge McVeigh awarded the Estate's attorneys $39,483.75. The judge issued a written decision in which she found that Val III still owed the Estate the $155,798 it paid to PNC, and that his administrative claim was not valid. The judge also required a proposed distribution plan for the Estate's remaining assets be filed. She later denied Val III's motion for reconsideration of that order.

On February 9, 2016, the Estate filed an amended verified final accounting. In support of its application, it detailed claims for payment being made by its counsel, the co-executors, the IRS, Farina and Val III. It explained that under N.J.S.A. 3B:22-2, Farina was not a judgment creditor because her judgment was obtained after decedent's death, rendering her a general claimant. Farina initially responded by filing a complaint seeking the appointment of a new executor to replace Val III and Bentley.

After considering the parties' oral arguments on March 23, 2016, Judge McVeigh denied Farina's application. In an oral decision placed on the record, the judge concluded that Farina was a general judgment creditor and did not have "extraordinary interest in what happened to this estate . . . ." She found that removing Bentley as the "only functioning executor . . . would be gross incompetence . . . ."

A-0443-17T4

After Farina filed her exceptions to the Estate's amended final accounting, the parties once again appeared for oral argument on April 22, 2016. After considering the parties' contentions, the judge again found that Farina was a judgment creditor of the Estate, not entitled to priority over the IRS. The judge stated that the "IRS stands before everybody," even though, as Farina argued, under 26 U.S.C. § 6323, the IRS did not file a notice of federal tax lien. Judge McVeigh ordered the Estate to file another amendment to its accounting, which it did on August 5, 2016. In the accounting, the Estate indicated that it owed $2,027,745.38 in liabilities, including the amount owed to Val III, but only had $273,927.14 in assets, providing a breakdown of its proposed distribution. Farina again filed exceptions.

The parties appeared before Judge Bruno Mongiardo[2] for oral argument on the final accounting on August 10, 2017, before he issued his August 17, 2017 order approving the final accounting for the reasons stated in his written decision issued on the same date. The judge concluded that the Estate's legal fees had first priority under N.J.S.A. 3B:22-2(b). He noted that the exceptions that Judge McVeigh did not dismiss were unrelated to legal fees and stated "[a]n

---

[2] Judge Mongiardo was assigned to the matter after Judge McVeigh retired in 2016.

A-0443-17T4

attorney's entitlement to be paid for services rendered is not merely a contractual right but also a professional right."  He found that that there was no legitimate issue or dispute about the attorney's "time spent, hourly rates, or the reasonableness or necessity of the charges for legal services" and that since 2013, most of the time expended was focused on addressing Farina's exceptions. As to the executors' commissions, the judge cited to N.J.S.A. 3B:18-24 and -25 and observed that no prior court found that Val III engaged in behavior that would justify depriving of the commission he was owed.

Judge Mongiardo also concluded that the IRS was entitled to the balance of the Estate's cash after all expenses were paid, including legal fees and executor commission fees, assuming there were assets left.  He too found that Farina was not a judgment lien creditor entitled to any priority because her claim was against the Estate, not the decedent.  He noted that Judge McVeigh already ruled on the matter of priority and reiterated that the IRS had a superior claim to Farina's.

The order entered by Judge Mongiardo on the same declared the Estate to be insolvent and directed that the $273,927.14 in cash that the Estate had be distributed pursuant to N.J.S.A. 3B:22-2.  Specifically, the order approved a previously made payment of $15,478.87 to the Passaic County Surrogate,

directed that Bentley be paid $5,412.16 for co-executor commissions, the Estate's attorneys be paid $208,531.84 in legal fees and expenses, and that a payment of $44,504.27 be made to the IRS for partial payment of the outstanding taxes. The order also provided that the amount owed by Val III to the Estate be reduced by $20,412.16, in order to satisfy Val III's co-executor fees. The order also stated that the IRS's claim had priority of all other claimants, but noted there were not enough assets to pay the entire claim. This appeal followed.

"The scope of appellate review of a trial court's fact-finding function is limited" because "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We decline to disturb "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). On the other hand, challenges to legal conclusions are subject to our de novo review. Estate of Hanges v. Metro Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83 (2010).

At the outset, we address what we consider to be the lynchpin to all of Farina's contentions on appeal. Specifically, Farina argues that her judgment was superior to all other creditors and that despite having received notice of the Estate's application for approval of the SPA in 2004, she was entitled to raise a challenge to it beginning in 2011. We find no merit to these contentions substantially for the reasons expressed by Judge McVeigh and Judge Mongiardo in their thorough written and oral decisions. We add only the following comments.

The appropriateness of the SPA under the circumstances that existed at the time were considered by Judge Humphreys after notice to Farina. Bentley properly filed a complaint for instructions because of Val III's involvement. "An executor has the right to apply to the courts for direction and guidance in the performance of the duties of his office or trust when he is in doubt as to the extent of his powers and duties or as to the proper manner in which to proceed." Fid. Union Tr. Co. v. Heller, 16 N.J. Super. 285, 292 (Ch. Div. 1951); see also 7 N.J. Practice, Wills and Administration § 1116 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed. 2019). Once Judge Humphreys decided that the SPA was

bona fide, Farina was barred by N.J.S.A. 3B:14-36[3] from raising a challenge to the judge's approval, absent circumstances warranting the vacating of Judge Humphreys' judgment under Rule 4:50-1. When Farina attempted to raise a challenge to that approval, Judge McVeigh found that there was no evidence of any reason to vacate the 2004 approval. Her conclusion was supported by the evidence in the record.

In any event, and regardless of the bona fides of the SPA, Farina's repeated contention that her judgment had priority over all creditors, including the IRS, is without merit because it is legally incorrect. N.J.S.A. 3B:22-2 sets forth the order of claimants to which an estate's personal representative shall make payments where "assets of the estate are insufficient to pay all claims . . . ."

---

[3] N.J.S.A. 3B:14-36 states:

> Any sale or encumbrance to the fiduciary, his spouse, agent or attorney, or any corporation or trust in which he has a substantial beneficial interest, or any transaction which is affected by a substantial conflict of interest on the part of the fiduciary, is voidable by any person interested in the estate except one who has consented after fair disclosure, unless:
>
> a. The will or a contract entered into by the decedent expressly authorized the transaction; or
>
> b. The transaction is approved by the court after notice to interested persons.

According to the statute, "debts and taxes" have priority over a creditor who obtained a judgment against a decedent before his or her death, and those creditors have priority over those who obtained a judgment against an estate or personal representative. "A judgment against an executor[ or] administrator . . . unlike a judgment against [a] decedent in his lifetime, is not entitled to a preference over other claims payable out of the assets of the decedent's estate." 7 N.J. Practice, Wills and Administration § 1283 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed. 2019). See also Ward v. Kaycoff, 9 N.J. Misc. 498 (1931) (noting that for judgments to be preferred, they must be actually entered during decedent's lifetime); 7 N.J. Practice, Wills and Administration § 1279 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed. 2019). In fact, in cases such as Farina's where the defendant dies during the litigation, our rules do not permit a judgment to be entered against the decedent where the claim is not extinguished by his or her death. See N.J.S.A. 2A:15-4 (eliminating the common law bar against post-mortem suits and permitting actions against a decedent's estate); see also R. 4:34-1(b) (addressing the substitution of representatives for deceased parties to a litigation); Long v. Landy, 35 N.J. 44, 53 (1961).

Also without merit is Farina's contention that the IRS was required to file notice of its claim under 26 U.S.C. § 6323 in order to have priority over her

A-0443-17T4

claim. 26 U.S.C. § 6321 states that, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6323(a) provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or <u>judgment lien creditor</u> until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." (Emphasis added).

Because Farina never had a judgment against decedent, she had no lien against his property prior to his death and was therefore a general claimant of the Estate. <u>See</u> N.J.S.A. 2A:17-17 ("no real estate of any testator or intestate shall be sold or in anywise affected by any judgment or execution against executors or administrators"). With or without filing its lien, the IRS would thus have priority over Farina's judgment under N.J.S.A. 3B:22-2(d).

We also conclude that Farina's challenge to the award of commissions and fees to the co-executors and the Estate's attorneys is without merit. We review those awards for a "clear abuse of discretion," only "disturb[ing] a fee determination . . . 'on the rarest of occasions . . . .'" <u>Jacobs v. Mark Lindsay & Son Plumbing & Heating, Inc.</u>, 458 N.J. Super. 194, 206 (App. Div. 2019)

18

(quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)); see also In re Estate of Summerlyn, 327 N.J. Super. 269, 272 (App. Div. 2000) (quoting In re Estate of Moore, 50 N.J. 131, 149 (1967)) (addressing review of awards of commissions).

Here, Farina never pursued any challenge to the calculation of the Estate's attorney's fees or the commissions awarded. Her only challenge was based upon her allegation that Val III engaged in impermissible self-dealing through an alleged conspiracy with counsel and Bentley. Both judges who considered her claims found them to be without merit. We conclude that their findings were supported by the evidence and their legal conclusions were correct. Because Farina's allegations failed to establish any abuse of discretion in either the fee award or the award of commissions, we have no reason to disturb the challenged awards.

Finally, to the extent that we have not specifically addressed any of Farina's remaining arguments, we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0443-17T4