The complainant is a communicant of the Jewish congregation known as The Talmud Torah of West New York and Guttenberg, in the County of Hudson, State of New Jersey.
On June 12th, 1934, complainant purchased from The Talmud Torah aforesaid a cemetery plot described in the deed of conveyance as follows:
"ALL those certain tracts of land and premises situate in Rochelle Park, in the County of Bergen, and State of New Jersey, which on the register map of the lands of Lakewood Cemetery Association on file in its office, entitled `Map No. 3 of the Exclusively Jewish Riverside Cemetery, Rochelle Park, N.J., revised for the Lakewood Cemetery Association by McClave 
McClave, Cliffside, N.J., November, 1918,' and filed in the office of the Clerk of Bergen County, State of New Jersey, on May 1, 1919, as Map No. 1663, known, laid down and designated as lots Plot 12 numbered one (1), two (2), three (3), six (6), seven (7) and eight (8) in Section 23, Block `C.'"
The deed also recites:
"It is expressly agreed by and between the respective parties hereto that the premises described herein shall be used solely for burial purposes for the grantee herein named, and her son, Benjamin Glatzer, and for no other purpose. It is also agreed that a light in the Memorial Tablet in the Synagogue shall be reserved by Mrs. Glatzer by the consent of her son, which has been paid for in full."
On August 13th, 1936, complainant obtained permission from The Talmud Torah to erect a mausoleum on the plot. Subsequently, she decided to abandon the idea of having a mausoleum and concluded to erect a monument instead. She entered into an agreement with a monument company for its construction. When that organization was prepared to set the monument, it asked the complainant to procure a permit from The Talmud Torah for its erection. *Page 90 
She accordingly applied for such permit and The Talmud Torah apprised her that the body of one Abram London, who died July 3d 1946, had been interred in lot 3 of her cemetery plot. Upon receiving this information, she thereupon asked The Talmud Torah and Sylvia Dinerman, a sister of Abram London, and administratrix of his estate, to remove the body from her plot. That request was met with a refusal by Sylvia Dinerman.
It appears that Abram London's wife, Rose, died on or about April 24th, 1944. Abram purchased from The Talmud Torah two burial plots — lots 3 and 4 in section 23, Block "C" — immediately adjacent to each other, one for the immediate purpose of interring his wife, and the other for his own subsequent interment. Rose was interred in lot 4.
The parties complainant and defendant stipulated that they had "consulted various orthodox Hebrew authorities in connection with the Hebrew law governing the interment and disinterment of bodies, and the Hebrew orthodox opinions rendered indicated that as far as the body of Abram London was concerned it must be exhumed because it was buried in a plot belonging to another, and that the body of Rose London, his wife, who was buried immediately adjacent to Abram London, may not be exhumed or removed."
The Hebrew law invoked by all the parties hereto clearly favors complainant's position. The defendant The Talmud Torah agrees with the complainant's contention that the body should be removed. However, the defendant Sylvia Dinerman objects to the removal saying that "to remove the body of Abram London would violate and transgress the last wish that he be buried adjacent to his wife."
There is no doubt that lot 3 was sold and conveyed to Abram London in error.
This court has jurisdiction in the premises. A long line of cases sustains its right and power to decide in what circumstances an interred body may be removed from its grave. InSmith v. Shepard, 64 N.J. Eq. 401; 54 Atl. Rep. 807, the court said among other things: "It is thus settled that there is no property right in a dead body; that upon the death of a married person the surviving husband or wife is *Page 91 
entitled to the custody of the dead body, and charged with the duty of furnishing proper burial; that when the duty has been discharged, and the remains of the dead have been buried, the right of custody in the surviving husband or wife at once ceases, and it may properly be said that the dead body thereafter is in the custody of the law, because the disturbance of its resting place and its removal is subject to the control and direction of a court of equity in any case properly before it. Peters v.Peters, 43 N.J. Eq. 140; 10 Atl. Rep. 742; Toppin v.Moriarity, 59 N.J. Eq. 115; 44 Atl. Rep. 469."
"The authorities are almost uniform in holding that there is no right of property in a strict sense or in the ordinary use of the term, in the dead body of a human being, and after burial the body becomes part and parcel of the ground to which it is committed." 25 C.J.S. 1016 ¶ 2.
However, the court will in a proper case enjoin the removal of a body where the burial was made in a grave belonging to the family and was interred therein with the consent of all the parties concerned. Peters v. Peters, supra; Toppin v.Moriarity, supra.
Certainly the body of a person buried in a grave belonging to another, who has in no manner consented to the interment of the body, cannot be said to be properly and suitably buried. In those circumstances the court will direct that the body be removed from such grave.
In the instant case the complainant, immediately upon being informed of the burial of Abram London's body in her burial plot, made objections and demanded its removal. This complainant's demand has not only legal sanction, but it is also sustained by Hebrew law governing the interment and disinterment of bodies — and since no religious principle seems to be violated in the complainant's demand, I shall advise an order granting the relief prayed for. *Page 92