765 A.2d 251 (2001)
336 N.J. Super. 458
Estate of Craig FITZGERALD, by Joan Fitzgerald, Executrix of the Estate of Craig Fitzgerald and Joan Fitzgerald, individually, Michelle Young, Colleen Fitzgerald, and Brian Fitzgerald, by his Guardian ad Litem, Joan Fitzgerald, individually, Plaintiffs-Appellants,
v.
Francis P. LINNUS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 2000.
Decided January 22, 2001.
*252 James Hely, Mountainside, argued the cause, for appellants (Weiseman, Hely, *253 Digioia & Boyle, attorneys; Mr. Hely, on the brief).
Michael D. Mezzacca, New Providence, argued the cause, for respondent (Fitzpatrick, Reilly, Supple & Gaul, attorneys; Mr. Mezzacca, on the brief).
Before Judges BAIME, WALLACE, Jr.[1] and CARCHMAN.
The opinion of the Court was delivered by CARCHMAN, J.A.D.
Following the untimely death of her husband, plaintiff Joan Fitzgerald (Joan) retained the legal services of defendant Francis P. Linnus. The nature of that representation and the duties imposed upon defendant generate the issues in this appeal. Plaintiffs assert that defendant owed a duty not only to Joan, but to her children, plaintiffs Michelle Young, Colleen Fitzgerald and Brian Fitzgerald[2] (collectively, the children) as her putative estate beneficiaries. The gravamen of plaintiffs' complaint is that defendant negligently failed to advise Joan that she could disclaim a portion of her husband's life insurance proceeds in favor of the children which would have resulted in a substantial estate tax savings upon Joan's death. Defendant responded by denying that he was retained to provide estate planning services for Joan or that he owed such a duty to Joan and the children. The motion judge agreed with defendant, granted summary judgment, and dismissed plaintiff's complaint. Plaintiffs appeal, and we affirm.
These are the facts adduced on the parties' cross-motions for summary judgment. On March 6, 1996, Craig Fitzgerald (decedent), a C.P.A. and partner at Price Waterhouse who held both J.D. and M.B.A. degrees, died suddenly. Decedent's last will and testament left his entire probate estate to Joan and named her as executrix. The children were named as contingent beneficiaries of a testamentary trust to be established for their benefit in the event Joan predeceased decedent.
Although decedent's will, along with Joan's reciprocal will, was prepared by defendant, a neighbor and social acquaintance, in 1988, it was not executed by decedent until January 10, 1995, approximately fourteen months prior to decedent's death. The Fitzgeralds' wills were prepared in accordance with decedent's instructions, including that defendant "not engage[ ] in any estate planning" at that time, as decedent would prepare an estate plan and advise defendant whether the wills were suitable. Apparently, no estate plan was ever formulated.
The material facts relevant to the parties' lawyer-client relationship are not genuinely in dispute. On March 7, 1996, the day after decedent's death, Joan retained defendant to aid her in administering decedent's estate. According to Joan: "I gave a retainer to Mr. Linnus to assist in the administration of the estate for which I was the executrix." Although the Fitzgeralds' assets were then worth approximately $2 million, decedent's estate was virtually "creditor-proof," as his probate estate was only valued at $65,376 on his date of death. Significantly, Joan was the named contract beneficiary of decedent's substantial life insurance policies, which were worth approximately $2.2 million in the aggregate. Joan expressed concern to defendant about whether the benefits of those policies would be paid under the circumstances of decedent's death, and instructed defendant to collect the proceeds.
By letter to Joan dated March 11, 1996, defendant confirmed that his firm had been "retained to represent the estate of... Craig Fitzgerald," set forth the terms of his fee and retainer agreement, and *254 delineated immediate measures to be taken in administering decedent's estate. Defendant also offered to refer Joan to a C.P.A. to insure the filing of the Fitzgerald's regular income tax returns. On March 12, 1996, Joan accepted the arrangement by acknowledgment and return of defendant's letter, along with a check for his retainer. Defendant subsequently corresponded with decedent's life insurance companies, obtained the proceeds for Joan by mid-April, and, according to Joan, "advised that [she] could simply deposit those checks and utilize them as [she] saw fit."
Shortly after she cashed those checks, Joan was advised by Lisa Butler, a social acquaintance who happened to be an estate planning attorney, that
this would have a detrimental effect on my own estate, and that I could have disclaimed some of the insurance proceeds and have those proceeds go to my children, so that they would never become part of my estate. I learned from her that since they were already cashed the proceeds would become part of my estate, and therefore would be subject to large federal estate taxes.
Joan then retained Butler to assist her in her own estate planning and to assume the administration of decedent's estate. Ultimately, Joan disclaimed $81,179 in favor of the children on Butler's advice, but elected not to disclaim an additional $145,000 representing decedent's 50% interest in the marital home because she believed she would lose various tax advantages and that her children's consent would be required to sell the home once they became owners of the disclaimed interest.
At Butler's suggestion, Joan then filed suit against defendant claiming that "approximately $525,000 was unable to be disclaimed as a result of the contended failure to advise," and that "[a]t the federal estate tax rate of 55%, the present value of the [additional] estate tax that will have to be paid [by Joan's children upon her death] is approximately $288,750."
Defendant testified at his deposition as to the nature of his retention and his undertaking at Joan's behest:
Joan's first inclination or primary inclination was to ask me how quickly she would be able to be coming into the estates money, because she was extremely concerned about the flow of money to her, so that she could live.... Craig was an executive at Price Waterhouse, made a substantial salary and had a substantial income. Now, that income was gone, so Joan indicated to me she wanted me to process and probate Craig's will as quickly as possible so that she would receive the money from Craig's estate.
That's what transpired. Basically, what I told Joan was that I would get her the money as quickly as I possibly could, but I was not in the position to give her tax advice or financial advice. I told her that she should immediately retain the services of a tax planner, a financial planner, or someone who would give her that advice, because she was going to be coming into what appeared to be a substantial amount of money, based on the assets that I had seen.
The parties agree that they never discussed Joan's estate, the impact of decedent's insurance policy proceeds on Joan's future estate taxes, or the possibility of disclaiming a portion of those proceeds prior to Joan's receipt and deposit of the funds on or about April 15 and 22, 1996. They also agree that Joan stated, and that defendant understood, that Joan was obtaining separate financial and tax planning advice, and that defendant had no knowledge of the identity of Joan's advisor until late April or early May when he was apprised that Joan had engaged Butler.
Defendant asserts that Joan retained him solely to expedite the administration of decedent's estate in accordance with decedent's testamentary wishes and pursuant to her instructions as executrix. He *255 admits that he discussed the tax consequences (none) of decedent's death, and that he did not discuss any tax liabilities which might arise upon Joan's death. When asked why he did not have such a discussion, defendant responded:
A: ... I don't believe I was retained for that purpose. I believe I was retained to carry out the wishes of the testator, Craig Fitzgerald.
Craig, as an attorney and as a CPA was fully knowledgeable, in my judgment, about the estate planning and what it would take to create an estate plan that would potentially avoid or eliminate or lessen the impact of estate taxes on the so called second estate, meaning his wife's estate.
Craig made it very clear that he wanted an outright distribution will, and that was what was prepared.
I believe that my duty was to follow the wishes of the testator, and also to follow the concerns of the executrix-in this case, Joan Fitzgerald-and Joan had made it very clear to me from about the first or second time that I saw her after the death, that she needed the money from the estate very quickly.
It was at that point that it triggered in my mind, Joan, you are coming into potentially a large amount of money.
The insurance policies alone would approach about two million dollars. You should get some tax advice and some financial planning advice with respect to these potential proceeds of the life insurance policies.
It was my understanding that she pursued that, and it was my further understanding that by the end of March she was meeting with a financial advisor or tax advisor to help her make decisions with respect to what could be done with respect to the estate she was about to receive.
In sum, defendant viewed his role as a narrow oneto represent the estate and secure the assets for Joan as instructed. He saw no conflict in performing this role consistent with the information he had gleaned from decedent at the time of drafting his will, and reiterated that he advised Joan to retain the services of a financial or tax planner to assist her in the future.
Joan's version comports with defendant's, as she concedes that she was advised to secure financial and tax assistance, and that there was no discussion of post-mortem estate planning. It is also undisputed that Joan received a letter from defendant dated May 8, 1996, stating: "You have indicated to me that you are obtaining financial advice and estate planning advice and that I am to continue to process Craig's estate without regard to the impact on your estate."
The motion judge denied plaintiffs' summary judgment motion, and granted defendant's motion dismissing plaintiffs' complaint with prejudice. She analyzed the claims of Joan and the children separately, examining defendant's respective duties as to each of them:
Notwithstanding the plaintiff's suggestion, I really think that you do have to, that one does have to look separately at the claim of Mrs. Fitzgerald and the claim of the children. And the reason for that is that you need to first analyze what is the duty of the attorney and to whom is the duty owed before you can make a decision as to whether or not there is malpractice or not.
The judge held that Joan's claim failed, regardless of whether defendant had committed malpractice, because Joan did not suffer any damages:
[Joan] retains the attorney ... to help her in the administration and the organization of this estate. She does not retain him, and I don't think there's evidence that she does retain him to do estate planning for her at the time. He had done some in the past, but it is clear that she was also suggesting to him that she was speaking with other planners and other individuals. There's no evidence *256 that she was asking him for advice on the issue of her own ultimate estate planning.
In that context, regardless, however, of whether he committed malpractice by not suggesting to her, and I'm not making a finding whether he did or he did not, but regardless of whether he committed malpractice as to her by not explaining to her that she could shelter some of this money for her children and for the benefit of her children if she chose to give up five or $600,000, the ultimate effect of whatever it was that Mr. Linnus did was to put another 500 or $600,000 directly into her pocket.
So the suggestion that she has some kind of emotional or psychic damages because she's living with the knowledge that her children will ultimately end up paying more money to the federal government, assuming that she doesn't use all of these funds during her lifetime, the suggestion that is damages, I think is, number one, speculative. Really, she has been vastly benefitted by additional sums payable to her, and with which she can do as she wishes. So I think that with respect to [Joan], the defendant is correct that there is no showing that she has suffered damages.
The judge held that the children's claims also failed, because defendant owed them no duty:
I do not agree with [plaintiffs'] suggestion that the defendant's duty was to consider the entire family when he was retained to help [Joan] to get the insurance proceeds made payable to her, or to help her to administer the [decedent's] estate.
The children were not the beneficiaries of any of those policies, they were not beneficiaries of any of the estate. Actually, the entire estate was left to [Joan] and for her benefit. The suggestion that in that context he owes some duty to a variety of putative heirs, I don't see that, I don't see support for that suggestion in any of the cases.
I think that ... BARNER v. SHELDON... quite clearly points out that the attorney's client is the executor of the estate, not other heirs, not other children, not other family members. So based upon that analysis, the [children] simply were not owed a legal duty, they simply have no claim against the defendant.
So the defendant's motion is granted; plaintiff[s'] motion is denied.
Plaintiffs contend that their claims were inseparable, and that the judge improperly granted summary judgment to defendant and should have granted them at least partial summary judgment because: (1) "an attorney's error caused substantial and irreparable financial harm to a family, and he should not have been exonerated by summary judgment through a strained and parsing consideration of what his duties were"; and (2) "there is no dispute that the advice wasn't given, that disclaimers are a known and common tool, that when Mrs. Fitzgerald found out about the tool she took advantage of it as soon as she could, and as a result of the attorney's failure there is a substantial loss." We disagree.
Plaintiffs rely exclusively upon Barner v. Sheldon, 292 N.J.Super. 258, 678 A.2d 767 (Law Div.1995), aff'd o.b., 292 N.J.Super. 157, 678 A.2d 717 (App.Div. 1996), in advancing two distinct theories of defendant's liability for legal malpractice: (1) defendant owed a direct duty to Joan, and thus owed a duty to her putative estate beneficiaries, to minimize her future estate taxes because he should have surmised that Joan had retained him to plan her estate; and (2) defendant owed both Joan and the children, as non-conflicting beneficiaries of decedent's estate, a duty to administer decedent's estate in their best interests by minimizing Joan's future estate taxes.
We first restate that the requisite elements of a legal malpractice claim are: "(1) the existence of an attorney-client relationship *257 creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Conklin v. Hannoch Weisman, 145 N.J. 395, 416, 678 A.2d 1060 (1996); DeAngelis v. Rose, 320 N.J.Super. 263, 274, 727 A.2d 61 (App.Div. 1999); Albright v. Burns, 206 N.J.Super. 625, 632, 503 A.2d 386 (App.Div.1986); Lovett v. Estate of Lovett, 250 N.J.Super. 79, 87, 593 A.2d 382 (Ch.Div.1991).
We recently reiterated that "`[a]lthough not a guarantor against errors in judgment, an attorney is required to exercise on his client's behalf the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated and to employ reasonable care and prudence in connection therewith.'" Vort v. Hollander, 257 N.J.Super. 56, 61, 607 A.2d 1339 (App. Div.), certif. denied, 130 N.J. 599, 617 A.2d 1221 (1992) (quoting Lamb v. Barbour, 188 N.J.Super. 6, 12, 455 A.2d 1122 (App.Div. 1982) certif. denied, 93 N.J. 297, 460 A.2d 693 (1983)). See also 2175 Lemoine Ave. v. Finco, Inc., 272 N.J.Super. 478, 487, 640 A.2d 346 (App.Div.1994). "We have consistently recited that command in rather broad terms, for lawyers' duties in specific cases vary with the circumstances presented. `What constitutes a reasonable degree of care is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform.'" Ziegelheim v. Apollo, 128 N.J. 250, 260, 607 A.2d 1298 (1992) (quoting St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 588, 443 A.2d 1052 (1982)).
The absence of an attorney-client or fiduciary relationship does not necessarily bar a legal malpractice claim by a non-client where an independent duty is owed. Davin, L.L.C., v. Daham, 329 N.J.Super. 54, 73-75, 746 A.2d 1034 (App.Div.2000); DeAngelis, supra, 320 N.J.Super. at 274-76, 727 A.2d 61. Whether that duty exists is a question of law to be determined by the court, and ultimately turns on considerations of fairness and policy. Davin, supra, 329 N.J.Super. at 73, 746 A.2d 1034 (citing Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996)); DeAngelis, supra, 320 N.J.Super. at 274, 727 A.2d 61; Barner, supra, 292 N.J.Super. at 265, 678 A.2d 767. "The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Barner, supra, 292 N.J.Super. at 261, 678 A.2d 767 (quoting Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962)).
In Barner v. Sheldon, the Law Division judge examined whether an attorney retained by an executor to administer an estate owes a duty to the estate beneficiaries, and delineated the respective duties of attorneys and executors under those circumstances. 292 N.J.Super. at 261-66, 678 A.2d 767. The judge observed that an executor is duty-bound "to observe the directions of the testator's will," and "to administer the estate properly and in accordance with the will of the testator":
The will of the testator ... is the law to the executors ... any deviation from such authority is illegal, and at their own risk. The executors are bound to observe this direction of the will. The wisdom of the direction is not for their consideration. Dickerson v. Camden Trust Co., 140 N.J. Eq. 34-44, 53 A.2d 225 (Ch.1947).
....
A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and applicable law, and as expeditiously and efficiently as is consistent with the best interests of the estate. He shall use the authority conferred upon him by law, the terms of the will, if any, and any offer in proceedings to which he is a party for the best interests of successors to the estate. [quoting] N.J.S.A. 3B:10-23.
[Id. at 265, 678 A.2d 767.]
*258 As to the attorney's duties, the judge observed that the attorney's client is the executor of the estate, and not the estate itself:
When an attorney is employed to render services in procuring admission of a will to probate or in settling the estate, he acts as attorney of the executor, and not of the estate and for his services the executor is personally responsible.
It would be very dangerous to conclude that the attorney, through performance of his service to the administrator and by way of communication to estate beneficiaries, subjects himself to claims of negligence from the beneficiaries. The beneficiaries are entitled to even-handed and fair administration by the fiduciary. They are not owed a duty directly by the fiduciary's attorney. In Ogieis [Ogier's] Estate, 101 Cal. 381, 35 P. 900 (1894).
[Id. at 265-66, 678 A.2d 767.]
The judge ultimately concluded that an attorney retained to administer an estate may owe a duty to its beneficiaries under "egregious circumstances" such as fraud, collusion, or malice, or where a separate duty to those beneficiaries has been undertaken. Id. However, the judge cautioned that it is clear that "if a beneficiary's interest is adversarial to the interest of the estate and contrary to the will of the testator, then no such duty shall be imposed." Id.
Plaintiffs first contend that defendant owed a direct duty to Joan, and thus to the children as her putative estate beneficiaries. He was obligated, they contend, to minimize her future estate taxes because defendant "had advised Mr. & Mrs. Fitzgerald previously on estate planning matters," and he therefore should have surmised that he was retained not only to assist Joan in her capacity as executrix in administering and collecting the proceeds of decedent's estate, but also to assist Joan individually in her own estate planning. This argument is without merit.
Defendant never engaged in any estate planning services for the Fitzgeralds, as decedent himself intended to formulate their estate plans. Notwithstanding defendant's use of the term "estate planning" in his bill for the Fitzgeralds' wills, defendant's deposition testimony and his correspondence concerning the drafting of their wills plainly indicate that Joan and decedent did not avail themselves of any estate planning services by defendant.
Joan confirmed not only that she had never discussed with either decedent or defendant whether "estate planning devices" should have been incorporated into the Fitzgeralds' wills or effected by other means, but also that she had no knowledge of whether decedent had ever formulated any estate plan. Moreover, Joan confirmed that she had retained defendant specifically to administer decedent's estate. She also confirmed her concern that she "might not get all [the life insurance] money" given the circumstances of decedent's death, that she had explicitly instructed defendant to collect those proceeds, and that she never discussed estate planning or the impact of those proceeds on her own estate with defendant aside from advising him that she intended to consult other professionals because she "wanted to use someone that specialized in money management." Finally, Joan confirmed that defendant never held himself out to her as an estate planner, that she knew he was not giving her tax or financial advice, and that she had, in fact, consulted with others in that regard and so informed defendant.
On these facts, as viewed in the light most favorable to plaintiffs, the judge properly determined there was no evidence that Joan had engaged defendant for her own estate planning purposes. Although the judge ultimately determined that Joan's claim failed because she had been enriched rather than suffering any damages, and the judge therefore declined to make a specific finding at to whether defendant had committed malpractice, we conclude that Joan's claim fails because *259 defendant owed Joan no duty with regard to her own estate planning, as he was retained by Joan solely in her capacity as executrix of decedent's estate.
The role of an attorney can be circumscribed by the terms of his or her engagement by the client. Here the engagement was narrowly conceived by both parties and defendant's role was clearly delineated. Certainly, defendant could have given advice as to the potential savings when Joan dies by disclaiming $600,000, but there was no duty to do so. The suggestion that an attorney retained to represent an estate has an affirmative obligation to engage an executrix-wife in post-mortem estate planning fails to recognize the realities of the retention and that of a limited attorney-client relationship.
All parties acknowledge that decedent and his wife could have achieved potential tax savings if they had engaged in mutual estate planning. Alternatives included marital, non-marital or other commonly used trust devices. In most circumstances, the use of such planning devices would have provided a potential tax savings while leaving the decedent and plaintiff with sufficient flexibility to adjust their plan as circumstances changed over time. In sum, such planning devices need not be irrevocable or cause a donor and spouse to divest themselves of control or use of assets (other estate planning modalities which require such divestiture are not relevant here). Such transient planning is commonly utilized and appropriately recognizes a snap-shot of the parties' and the beneficiaries' relationships at a given point in time. The "planning" device available to Joan was distinctly different. Her choice was to disclaim irrevocably $600,000 by, in essence, divesting herself of those funds at a time when she had expressed concern to her attorney about her financial future.
We do not perceive that the driving force of "fairness" which underscores any duty is present in these circumstances to impose on an attorney representing an estate, the obligation to advise on matters of post-mortem estate planning. Plaintiffs have provided no authority for such a duty, and we decline to impose one here.
Plaintiffs also contend that under Barner v. Sheldon, supra, defendant owed both Joan and the children a duty to administer decedent's estate in their best interests by ensuring that Joan's future estate taxes were minimized because Joan and the children were non-conflicting beneficiaries of decedent's estate. Plaintiffs' argument is based upon a misinterpretation of Barner. In Barner, we affirmed the opinion below which held that a defendant-attorney who drafted decedent's will and was subsequently appointed by decedent's executrix to administer the estate had no duty to inform the estate beneficiaries, decedent's children, of the tax consequences of failing to disclaim their inheritance in favor of their mother where that disclaimer would clearly have been contrary to the testator's intent of minimizing estate benefits to his wife. 292 N.J.Super. 157, 158, 678 A.2d 717 (App.Div. 1996).
While the judge observed that clearly no duty would follow where there was an obvious conflict between a beneficiary's interest and that of the estate, plaintiffs' argument here suggests that the absence of such a conflict would create the duty. We neither accept that premise nor read Barner to compel that result. While we do not dismiss the possibility that circumstances might arise where an attorney would have such a duty, those circumstances are not present here. The children were not beneficiaries of decedent's probate estate or his life insurance policies, and defendant owed them no duty in that regard or as the potential beneficiaries of Joan's estate.
We conclude that defendant's duties to Joan both as client-executrix and sole beneficiary of decedent's probate and non-probate assets were fully met. Defendant's administration of the estate comported not only with decedent's "will and wisdom" to leave his entire estate, including the insurance policy proceeds, to his *260 surviving wife rather than to his children, cf. Barner, supra, 292 N.J.Super. at 266, 678 A.2d 767, but also with Joan's express instructions and her duties as client-executrix to settle and distribute the estate in accordance with the terms of decedent's will and applicable law, "`as expeditiously and efficiently'" as was consistent with the best interests of decedent's estate, id. at 265, 678 A.2d 767 (quoting N.J.S.A. 3B:10-23).
Decedent was a C.P.A. and partner at Price Waterhouse, and held both J.D. and M.B.A. degrees. He directed defendant to draft a simple outright distribution will for his surviving wife's sole benefit and without the benefit of an accompanying estate plan. He clearly intended for the proceeds of his life insurance policies to pass directly to Joan as contract beneficiary by operation of law rather than to his estate. As such, any disclaimer by Joan of those proceeds in favor of decedent's small probate estate would have been contrary not only to decedent's express intent regarding his probate and non-probate assets, but also, according to defendant's expert, contrary to the best interests of decedent's estate, as such a disclaimer might well have increased the exposure of decedent's estate to the claims of potential creditors.
As in Barner, supra, "[t]he position of the plaintiffs that they should have been told to disclaim is ... obviously contrary to the will of the testator and adversarial to his intention," 292 N.J.Super. at 266, 678 A.2d 767, that the entirety of his small probate estate pass to Joan for her sole use and benefit, and that his substantial non-probate assets, including life insurance proceeds, pass directly to Joan outside of his estate by operation of property and contract law, and beyond the reach of creditors.
In sum, we conclude that Barner supports the view that defendant owed no duty to plaintiffs and that the motion judge properly dismissed their claims. We recognize that the realities of the practice of law may cause one attorney to offer post-mortem estate planning advice to a widow seeking estate representation, while another attorney may view his or her role as circumscribed within the limits of the retainer. Although determining whether a duty exists is necessarily fact-dependent, generally, neither attorney would be acting improperly or violating any duty to the client under these circumstances. Defendant's choice of the latter course here does not form the basis of a cause of action.
Finally, we note the irony presented by the facts is that decedent could have achieved the same result in a manner more favorable to Joan. The reality of Joan's initial plight could not be fully appreciated when she consulted Butler months after her husband's death, but rather within one day of his death, when she consulted defendant expressing concern for her lack of income, lack of funds to provide for her future needs and those of the children, and her precarious sense of security as a widow with three children.
Because we determine that defendant owed no duty to plaintiffs, we need not address the issue of damages.
Affirmed.
NOTES
[1] Judge Wallace, Jr. did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] Brian was a minor at the time of the filing of the complaint and appeared through Joan as his Guardian ad Litem.