MINKOWITZ, A.J.S.C.
*481 This matter was opened to the court on a petition and cross-petition by each of the surviving parents of decedent, John E. Travers, Jr., who died unexpectedly on September 19, 2017, at the age of twenty-two. Oral argument was held on October 30, 2017. Decedent was unmarried and died without issue, without a will, and without any written directive regarding his funeral or disposition of remains. Decedent's parents, who are divorced, differ on how their son's remains should be disposed, and each seeks control over the remains pursuant to N.J.S.A. 45:27-22. Decedent's father, John E. Travers, Sr., wishes his son's remains to be buried, while decedent's mother, Katherine Coyle Travers, wishes her son's remains to be cremated.[1] The parties have admirably reached agreement on every other aspect of the administration of their son's estate, including funeral arrangements and estate distribution, and now seek assistance from the court to resolve this one significant issue.
The pertinent part of the New Jersey Cemetery Act, N.J.S.A. 45:27-22 (Control of funeral, disposition of remains) (the "Statute"), provides as follows:
*482 a. If a decedent, in a will as defined in N.J.S. 3B:1-2, appoints a person to control the funeral and disposition of the human remains, the funeral and disposition shall be in accordance with the instructions of the person so appointed. A person so appointed shall not have to be executor of the will. The funeral and disposition may occur prior to probate of the will, in accordance with section 40 of P.L.2003, c.261 (C.3B:10-21.1). If the decedent *107 has not left a will appointing a person to control the funeral and disposition of the remains, the right to control the funeral and disposition of the human remains shall be in the following order, unless other directions have been given by a court of competent jurisdiction:
(1) The surviving spouse of the decedent.
(2) A majority of the surviving adult children of the decedent.
(3) The surviving parent or parents of the decedent.
(4) A majority of the brothers and sisters of the decedent.
(5) Other next-of-kin of the decedent according to the degree of consanguinity.
(6) If there are no know living relatives, a cemetery may rely on the written authorization of any other person acting on behalf of the decedent.
[ N.J.S.A. 45:27-22.]
"The role of the Court in statutory interpretation 'is to determine and effectuate the Legislature's intent.' " Marino v. Marino, 200 N.J. 315, 329, 981 A.2d 855 (2009) (citing Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553, 964 A.2d 741 (2009) ). The court must first look to the plain language of the statute to determine whether the Legislature's intent can be derived from the words it has chosen. Ibid. (citing Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264, 952 A.2d 1077 (2008) ). "[I]f the plain language of the statute is not clear or if it is susceptible to more than one possible meaning or interpretation, courts may look to extrinsic secondary sources to serve as their guide." Ibid. (citation omitted).
In accord with the Statute, if a decedent has not left a will appointing a person to control disposition and has no surviving spouse or adult children, the Statute confers the right to control the funeral arrangements and disposition of the remains to the surviving parents of the deceased. N.J.S.A. 45:27-22a(3); Gately v. Hamilton Mem'l Home, Inc., 442 N.J. Super. 542, 554, 125 A.3d 747 (App. Div. 2015). Moreover, in the event of a dispute, our Supreme Court has confirmed that "the court is empowered to, *483 and may, act to resolve disputes" among next-of-kin under the Statute. Marino, 200 N.J. at 332, 981 A.2d 855.
However, while the Statute provides the order of persons to be granted the right to control the funeral arrangements and disposition of human remains, and the court is empowered to resolve disputes, there is no guidance in the Statute, or in New Jersey case law, on how to resolve a dispute that arises between even numbers of next-of-kin of equal statutory standing (i.e., surviving adult children, parents, siblings or other next-of-kin according to the degree of consanguinity). Indeed, the Appellate Division in Gately acknowledged the lack of guiding authority. See Gately, 442 N.J. Super. at 554, 125 A.3d 747.
N.J.S.A. 45:27-22 was amended in 2003. The only relevant legislative history is set forth in the Senate Commerce Committee's Statement to the Senate, which, in pertinent part, states as follows:
The commission made small substantive changes, such as clarifying that if a person has decided on his own funeral or burial arrangements, the decisions are binding, but those decisions must be in writing.
....
Other portions of the bill have been developed to acknowledge changes in ... such areas as family decision making, by permitting someone to be responsible *108 for disposition of remains outside of the usual lines of next of kin.
....
The amendments make various ... other changes to the bill, such as ... if a decedent appoints a person in his will to control the funeral and disposition of the human remains, the funeral and disposition shall be in accord with the instructions of the person appointed.
[Senate Commerce Comm. Statement to S. 1992 (June 12, 2003).]
With the amendments to the Statute in 2003, the Legislature empowered individuals to make their own funeral and/or burial arrangements in a will, or designate a personal representative to make those decisions. Ibid. A reasonable interpretation of the legislative intent, therefore, is that the amendments ensure that funerals and disposition of remains shall be in accord with the wishes and desires of the decedent. Thereafter, "a court's duty in probate matters [is]... 'to ascertain and give effect to the probable *484 intention of the testator.' " In re Probate & Codicil of Macool, 416 N.J. Super. 298, 307, 3 A.3d 1258 (App. Div. 2010) (quoting Fidelity Union Trust v. Robert, 36 N.J. 561, 564, 178 A.2d 185 (1962) ). See also In re Estate of Ehrlich, 427 N.J. Super. 64, 72, 47 A.3d 12 (App. Div. 2012). Accordingly, the court, in a dispute such as the one here, should carefully consider which next-of-kin of equal standing under the Statute will likely control the funeral and/or disposition of remains in a manner that most closely reflects the wishes, desires and expectations of the decedent.
It follows, therefore, that evidence of the wishes, desires and expectations of the decedent, with regard to funeral arrangements and/or disposition of remains, will help guide the court in appointing control to the next-of-kin of equal standing who would most likely abide by those wishes, desires and expectations to the extent possible. To that end, if available, the court should consider any evidence of communications, written[2] or otherwise, between decedent and others that express the decedent's wishes, desires and expectations for funeral arrangements and/or disposition of remains.
Additionally, relationships between the decedent and next-of-kin of equal standing may be highly relevant. In Toppin v. Moriarty, 59 N.J. Eq. 115, 44 A. 469 (Ch. 1899), the court regarded the primacy and nearness of relationships in cases involving decisions regarding burial. The sentiment set forth within that case has been the impetus for the enactment of law, and certainly the Statute at issue here as evidenced by the fact that the order of persons to be granted control under N.J.S.A. 45:27-22 is dependent *485 on the closeness of their kinship. Indeed, the nature of relationships between the decedent and the person granted control of the funeral arrangements and disposition of remains is an important factor to consider, as persons with a closer relationship to the decedent are more likely to be in a better position to surmise the decedent's desires or expectations upon death. Therefore, the court should consider the closeness of the relationships between next-of-kin of equal *109 standing and the decedent to inform its decision on the appointment of control under the Statute.
Further, the religious and/or cultural background of the decedent should also be considered. In Toppin v. Moriarty, the court, citing English common law, recognized the importance of ecclesiastical law in the disposition of remains. 59 N.J. Eq. at 116-18, 44 A. 469. As the intent of the Statute focuses on the desires of the decedent, the decedent's religious beliefs and/or cultural practices, to the extent that funeral arrangements and/or disposal of remains are addressed by such beliefs and practices, may inform the court as to the decedent's reasonable expectations upon death. Accordingly, to the extent the court finds that religious beliefs and/or culture practices are relevant to the matter, consideration should be given as to which next-of-kin of equal standing would be more likely to abide the religious and/or cultural practices of the decedent.
While the wishes and desires of the deceased are most relevant to the court's analysis on the selection of the person to control the funeral arrangements and/or disposition of remains, there are other considerations relating to the administration of the estate as well. New Jersey law recognizes obligations of administrators of estates. Under N.J.S.A. 3B:10-23, personal representatives have a duty to settle an estate of the decedent as "consistent with the best interests of the estate."[3] See also *486 Fitzgerald v. Linnus, 336 N.J. Super. 458, 468, 765 A.2d 251 (App. Div. 2001) (quoting Barner v. Sheldon, 292 N.J. Super. 258, 265, 678 A.2d 767 (Law Div. 1995) ). A "best interests of the estate" analysis may be necessary to resolve a dispute between next-of-kin of equal standing, as the cost of a funeral and/or disposition of remains sought by a party may or may not be affordable to the estate. In that instance, the source of funding to provide for the funeral and/or disposition of remains may be the paramount consideration. For that reason, the court may consider, if known, which next-of-kin of equal standing will ultimately be designated as the administrator of the estate, as that person will be obligated to act in the best interests of the estate to protect the estate's assets and ensure payment for funeral and/or disposition expenses. N.J.S.A. 3B:10-23 ; Fitzgerald, 336 N.J. Super. at 468, 765 A.2d 251.
Accordingly, the court holds that where next-of-kin of equal statutory standing find themselves in dispute over funeral arrangements and/or disposition of remains, the court should consider the following factors when selecting the person in control under N.J.S.A. 45:27-22 :
(1) Which next-of-kin of equal standing is more likely to abide by the wishes and desires of the decedent as expressed through communications with another, to the extent the decedent made those communications;
(2) Which next-of-kin of equal standing established a closer relationship to the decedent, and is thereby in a better position to surmise the decedent's *110 desires and expectations upon death;
(3) Which next-of-kin of equal standing is more likely to adhere to the religious beliefs and/or cultural practices of the decedent, to the extent that funeral arrangements and/or disposal of remains are addressed by such beliefs and practices, and to the extent that those beliefs and practices are relevant to inform the court as to the wishes, desires and expectations of the decedent upon death; and *487 (4) Which next-of-kin of equal standing will ultimately be designated administrator(s) of the estate and act in the best interests of the estate to: (a) determine the costs, funeral arrangements and/or disposition of human remains; (b) assess the ability of the estate to pay for the costs of funeral arrangements and/or disposition of human remains; and (c) arrange for alternative funding and/or resources to effectuate the funeral and/or disposition in the event that the estate does not have the ability to pay for the costs of human remains (i.e., locating funding from other next-of-kin, charities, fraternal organizations, religious institutions, governmental agencies, etc.)
When rendering its decision, the court should conduct a qualitative analysis of each factor, giving due weight to each as appropriate.[4]
In the case at bar, the court considered the following relevant factors as set forth herein:
Factor One - Wishes of Decedent
It is undisputed that John E. Travers, Jr. left no will, and made no communications to others relative to the disposition of his remains upon his death. Accordingly, this factor is neutral, as it does not shed light on decedent's wishes, desires or expectations for his disposition upon death.
Factor Two - Nature of the Relationship Between Petitioners and Decedent
The parties concur that John E. Travers, Jr.'s father, John E. Travers, Sr., was designated the parent of primary residence upon the parties' divorce when John E. Travers, Jr. was fourteen years old. John E. Travers, Jr. lived exclusively with his father until his death. Moreover, as an adult, John E. Travers, Jr. was employed full-time by his father in the family business. It is undisputed that since the parties' divorce, and up to approximately three weeks before his death, the decedent saw his mother on sporadic occasions and primarily communicated with her through *488 telephone calls. Considering these facts, and solely for the purposes of analyzing this factor, the court concludes that between the two parents, decedent's father, John E. Travers, Sr., had the closer relationship to the decedent at the time of his death. Consequently, John E. Travers, Sr. is in a better position to surmise the decedent's wishes and desires for disposition of remains. Accordingly, this factor weighs heavily in favor of appointing control to decedent's father, John E. Travers, Sr.
Factor Three - Religious Beliefs and/or Cultural Practices
The parties stipulate that the decedent was raised as a Roman Catholic. The parties agree that, although burial has historically *111 been preferred, the Roman Catholic faith now provides for both burial and cremation. Thus, this factor is neutral as it does not shed light on decedent's expectations for his disposition upon death.
Factor Four - Best Interests of the Estate
At oral argument, Katherine Coyle Travers conceded that even if granted control of the disposition of the decedent's remains, John E. Travers, Sr. would be ultimately appointed the sole administrator of the estate. Notwithstanding, the parties stipulate that the estate has little or no assets from which to pay for the disposition of decedent's remains. John E. Travers, Sr. represents that he would personally pay for the remaining funeral home costs and the costs of burial, while Katherine Coyle Travers represents that her parents would pay for the costs of cremation. Consequently, a best interests of the estate analysis is moot, as there are little or no assets in the estate to protect, and funding is available through other next-of-kin.
Conclusion
Upon consideration of all relevant factors, and because the nature of decedent's relationship to his father places John E. Travers, Sr., in a better position to surmise the wishes and desires of the decedent, the court grants John E. Travers, Sr.'s petition to *489 control the disposition of the remains of decedent in accordance with N.J.S.A. 45:27-22. Katherine Coyle Travers' cross-petition for the same relief is denied.
A copy of this opinion with conforming order has been served on the parties by the court.

Both parents have proffered reasonable explanations for their respective positions that are very personal to them and emotionally charged. However, for the reasons set forth infra, only the wishes and desires of the decedent, not the parents, are relevant for the purposes of this review.

Indeed, such a writing may constitute a will. Although N.J.S.A. 45:27-22 indicates that a decedent may, in a will, either indicate his/her wishes and desires for funeral arrangements and/or disposition of remains, or designate someone to make those decisions, N.J.S.A. 3B:3-3 represents a relaxation of the rules regarding formal execution of wills so as to effectuate the intent of the testator, and dispenses with the requirement that the proposed document be executed or otherwise signed by the testator. In re Estate of Ehrlich, 427 N.J. Super. at 72, 47 A.3d 12.

N.J.S.A. 3B:10-23 (Duty of personal representative to settle and distribute estate), states as follows:
A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and applicable law, and as expeditiously and efficiently as is consistent with the best interests of the estate. He shall use the authority conferred upon him by law, the terms of the will, if any, and any order in proceedings to which he is a party for the best interests of successors to the estate.
[N.J.S.A. 3B:10-23 (emphasis added).]

A plenary hearing may be necessary if there is a dispute of material fact that is essential in rendering decision. Notwithstanding, such a hearing should be held on an expedited basis to address the sensitive nature of the application and ensure the prompt disposition of remains.