Cohen, et al. v. Shaines                    CV-00-396-M    04/25/01
                    UNITED STATES DISTRICT COURT

                        DISTRICT OF NEW HAMPSHIRE


Abraham B. Cohen and David Stafford,
Individually and as Partners/Members
of Abraham B. Cohen, CPA, P.C., and
Cohen and Stafford, CPA, P.C.,
        Plaintiffs

        v.                                  Civil No. 00-396-M
                                            Opinion No. 2001 DNH 080
Robert A. Shaines, Esq.,
        Defendant


                            **O R D E R**


        In 1998, Irene Levy (not a party to this litigation) filed a

malpractice action against her accountants - plaintiffs in this

proceeding - Abraham Cohen and David Stafford, individually and

as partners/members of Abraham B. Cohen, CPA, P.C. and Cohen and

Stafford, CPA, P.C.  She brought that suit after the Internal

Revenue Service audited tax returns prepared by plaintiffs and

determined that Levy was liable for approximately $135,000 in

unpaid taxes and interest.  Eventually, plaintiffs settled Levy's

malpractice suit against them and, in this case, now seek

contribution from Defendant Attorney Robert A. Shaines, pursuant

to N.H. Rev. Stat. Ann. ("RSA") 507-7:f.

Shaines moves to dismiss the complaint, saying it fails to set forth a viable cause of action. See Fed. R. Civ. P. 12(b)(6). Plaintiffs object and note that because Shaines' motion references materials beyond the complaint, it should be viewed as one for summary judgment. See Fed. R. Civ. P. 12(b). Accordingly, plaintiffs have treated Shaines' motion as one for summary judgment and have, in their objection, also referenced materials beyond the complaint. They have not requested additional time to respond to Shaines' motion under either Rule 12(b) or Rule 56(f). It would probably be reasonable to assume, then, that plaintiffs have had a "reasonable opportunity to present all material pertinent to such a motion," Fed. R. Civ. P. 12(b), and that the parties wish the motion to be treated as one for summary judgment.

The motion to dismiss necessarily fails, as a motion to dismiss, because accepting the allegations set forth in the complaint as true (as the court must), it plainly alleges each of the essential elements of a viable contribution claim against Shaines. And, even if Shaines' motion is considered as one for summary judgment, the record is insufficiently developed at this

point to support a finding that Shaines is entitled to judgment as a matter of law.

**Standard of Review**

Treating the motion as one for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Background**

Viewing the current record in the light most favorable to plaintiffs, the undisputed material facts appear as follows.

Shaines is an attorney who practices law in Portsmouth, New Hampshire. Although he does not hold an advanced degree in tax law, he is knowledgeable and experienced in legal matters related to personal and corporate taxation. Irene Levy is a long-standing client of Shaines. At all times material to this case, she was a majority shareholder of a closely held corporation that Shaines also represented.

During the course of his professional relationship with Mrs. Levy, Shaines provided her with advice and legal services related to estate planning, as well as various legal issues confronting the corporation. Mrs. Levy also retained plaintiffs, certified public accountants and tax counselors, who provided general accounting services to the corporation and to Mrs. Levy individually. In the late 1980's, following the death of Mrs. Levy's husband, Shaines became more involved in her estate planning decisions, which included transferring stock in the corporation to Mrs. Levy's son. With those stock transfers, Mrs. Levy apparently exhausted all (or nearly all) of her unified estate and gift tax credit (a fact that became critical later).

4

Over the course of many years, Mrs. Levy elected not to withdraw funds due to her from the corporation as either salary or stock dividends and, instead, allowed those sums to be carried on the corporation's books as loans from shareholders. By 1993, the loans from Mrs. Levy to the corporation had grown to approximately $900,000. In July of 1993, Mrs. Levy, Shaines, and plaintiffs attended a meeting at Shaines' office, at which the parties discussed a proposal to capitalize the loans from Mrs. Levy to the corporation as an estate planning device. According to plaintiffs, Shaines acquiesced in that proposal. Eventually, plaintiffs prepared tax returns for the corporation and Mrs. Levy, consistent with her decision to capitalize those loans.

Plaintiffs allege that, at the time of the 1993 meeting and based on his prior estate planning work for Mrs. Levy, Shaines knew that she had actually exhausted (or nearly exhausted) her unified estate and gift tax credit. Thus, say plaintiffs, Shaines realized or should have realized that, because their proposal depended upon the availability of unified tax credits, at least a substantial portion of the loan capitalizations would be treated by the IRS as a taxable gift. Accordingly, plaintiffs

5

assert that Shaines had a duty to advise Mrs. Levy against plaintiffs' own proposal to capitalize her corporate loans, because he knew from his own past legal work for her that she had already exhausted the credits necessary for the proposal to work. Nevertheless, Shaines remained silent, thereby, plaintiffs say, breaching a duty to speak that he owed to Levy.

Several years later, in 1996, plaintiffs apparently asked Shaines to furnish them with a formal legal opinion as to whether Mrs. Levy's capitalization of her shareholder loans would be treated by the IRS as a taxable event. After researching the issue, Shaines opined that the capitalization of those loans would be taxable. Perhaps not coincidentally, shortly thereafter the IRS formally audited Levy's 1993 tax returns and, as predicted by Shaines, determined that the loan capitalizations constituted taxable gifts from Mrs. Levy. She paid a substantial gift tax on the capitalized loans and then filed the referenced malpractice suit against her accountants, who, having settled with Levy, now seek contribution from Shaines.

## Discussion

Based upon Shaines' long-standing attorney-client relationship with Mrs. Levy, and because Shaines had previously provided her with tax-related advice (including estate planning services that exhausted at least a substantial portion of her unified estate and gift tax credit), plaintiffs assert that Shaines had a duty to advise those present at the July, 1983, meeting - specifically Mrs. Levy - against the proposed capitalization of the loans. Plaintiffs say that by remaining silent, Shaines breached a legal duty he owed to Mrs. Levy that, in conjunction with plaintiffs' own negligence (failing to determine whether a unified tax credit was available, for example), proximately caused her to incur the taxes and penalties imposed by the IRS following its audit.

The facts presented here are not typical of cases in which a non-client seeks to hold an attorney liable for alleged malpractice. In the usual case, the non-client plaintiff asserts that the attorney breached a duty of care owed directly to the non-client, proximately causing reasonably foreseeable injury to the non-client. See, e.g., Simpson v. Calivas, 139 N.H. 1 (1994)

7

(attorney may be liable to non-client intended beneficiary of will negligently drafted by that attorney).  Here, however, plaintiffs acknowledge that Shaines neither owed nor breached any duty to them.  See Plaintiffs' memorandum (document no. 3) at 4 ("defendant correctly argues that plaintiffs in the complaint have not alleged a breach of a duty owed to plaintiffs. . . .").  Instead, plaintiffs assert that Shaines breached a duty owed to his client, Mrs. Levy.  See First Amended Complaint at paras. 24-25.

Since plaintiffs contend that they and Shaines are joint tortfeasors who breached a shared duty owed to Mrs. Levy, and because plaintiffs have settled Mrs. Levy's claims against them, their contribution claim is ripe under RSA 507-7:f.  That statute provides, in pertinent part:

> [A] right of contribution exists between or among 2 or
> more persons who are jointly and severally liable upon
> the same indivisible claim, or otherwise liable for the
> same injury, death, or harm . . . .

RSA 507:7-f, I.[1]

---

[1]  To prevail against Shaines, plaintiffs must also demonstrate that their settlement with Mrs. Levy was "reasonable."  That issue is not presently before the court.  It

Thus, in order to prevail against Shaines on their contribution claim, plaintiffs must establish that Shaines (like plaintiffs themselves) had and breached a duty to inform Mrs. Levy of pertinent facts within his knowledge relevant to the loan capitalization plan. As noted above, the complaint does not allege that Shaines breached any duty owed <u>to plaintiffs</u>. Nor does it allege that Shaines provided plaintiffs with erroneous information, upon which they then justifiably relied in preparing Mrs. Levy's tax returns. Instead, it focuses on Shaines' alleged duty to Mrs. Levy and what plaintiffs say constitutes a breach of that duty:

> Shaines owed a duty to Irene Levy to render advice and services with the skill, care and expertise of an attorney holding himself out as a specialist in tax law and estate planning. Nonetheless, Robert Shaines breached that duty when he failed to advise Irene Levy <u>during the course of joint estate planning discussions</u>

---

does, however, raise the following question: if Mrs. Levy could only achieve her estate planning goals by capitalizing the loans in question, how was she damaged (beyond interest and penalties levied by the IRS) by the fact that she was required to pay taxes on that capitalization? Of course, had she known that the capitalization of the loans would have been treated as a taxable event, she might have sought to achieve her estate planning goals through alternate means. If there were equally effective alternatives available to her, and if she would have pursued those alternatives instead of the proposal set forth by plaintiffs, then her settlement might well have been "reasonable," but that remains to be proven.

9

involving plaintiffs that there was a strong probability that the Internal Revenue Service would likely treat the loan capitalization as a taxable gift.

First Amended Complaint, at paras. 24, 25 (emphasis supplied).

Shaines, however, says he had no such duty. He has submitted an affidavit in which he says:

Mrs. Levy never asked me to advise her regarding capitalizing the loan which she made in 1993, nor regarding the gift tax consequences of capitalizing the loan. She asked her accountants, the plaintiffs in this action, to advise her of the costs of capitalization, which presumably would have included the cost of any gift tax. I was never asked by Mrs. Levy to address this question, and I did not do so until 1996 when the plaintiffs sought my opinion.

Exhibit A to defendant's motion, Affidavit of Robert Shaines at para. 2. Shaines has also submitted an affidavit from his client, Mrs. Levy, in which she says:

The [plaintiffs in this action] were my accountants, and I had hired them to provide me with tax advice, and to properly prepare my tax returns. I sued them because they failed to advise me that loan capitalizations would be assessed as taxable gifts by the IRS, and because they improperly prepared gift tax returns.

10

I did not sue Robert A. Shaines, Esquire because <u>I never retained Mr. Shaines to advise me of the tax consequences of the loan capitalizations</u>. Mr. Shaines was not retained to prepare gift tax returns.

Exhibit B to defendant's motion, Affidavit of Irene Levy, at paras. 2-3 (emphasis supplied).

Plaintiffs have pointed to no evidence suggesting collusion between Shaines and Mrs. Levy or otherwise undermining the accuracy of the representations in their affidavits. Instead, they simply assert (without citation to any legal authority) that:

> The duty to speak up at the meeting when Robert Shaines knows of the areas of the law that are adverse to the intended goals of his client cannot be controlled exclusively by the statements of attorney and client after the fact and under circumstances where there is an obvious intent of the part of Irene Levy to protect Robert Shaines from this action.

Plaintiffs' memorandum (document no. 9) at 7. Plaintiffs then go on to conclude:

> The past performance of Robert Shaines in rendering tax advice to Irene Levy, coupled with his specific knowledge of Irene Levy's tax credits and his knowledge of the tax consequences of the loan capitalization, is sufficient to create a duty to speak at the meeting if

11

he knows, or in the exercise of reasonable care should know, that his client is about to incur tax consequences as a result of a course of action that he has specifically concurred with.

Plaintiffs' memorandum at 6-7. As to that legal argument, the court disagrees. Nevertheless, because the record is silent on other, potentially dispositive issues discussed below, Shaines' motion (as one for summary judgment) must still be denied, on the record as it currently stands.

Plaintiffs' contribution claim against Shaines turns on the existence (and breach) of a duty on Shaines' part to advise Mrs. Levy about facts within his knowledge and expertise, and for which purpose he was both engaged by Mrs. Levy and present at the meeting, that would likely affect the tax consequences associated with plaintiffs' proposed capitalization of her corporate loans. According to both Mrs. Levy (the client) and Shaines (her attorney), however, Shaines was <u>not</u> retained to provide legal advice concerning the <u>tax</u> <u>treatment</u> of the corporate loans. To the contrary, according to Mrs. Levy, that is precisely why she hired plaintiffs.

12

Absent some evidence that Shaines was hired to provide tax advice concerning the capitalization of the loans or, even more generally, advice or information related to tax returns filed by Mrs. Levy or the corporation, mere imputed knowledge on his part that plaintiffs' proposal might have been ill-advised, or that it was inadequately thought through does not give rise to an actionable legal duty to so inform the client. See, e.g., Fitzgerald v. Linnus, 336 N.J. Super. 458 (N.J. Super. Ct. App. Div. 2001) (counsel hired to represent the estate of client's deceased husband was not obligated to advise client on potential adverse tax consequences of failing to disclaim some insurance proceeds in favor of client's children); Jamison v. Norman, 771 S.W.2d 408 (Tenn. 1989) (attorney retained by client to pursue tort claims against third party had no obligation to inform client that his worker's compensation claim arising out of same injury should be filed in neighboring state, to avoid worker's compensation carrier's subrogation rights in underlying personal injury case).

In other words, the scope of Shaines' duty to his client is defined by the purpose(s) for which he was retained.

> Clients and lawyers may define in reasonable ways the
> services a lawyer is to provide, for example to handle
> a trial but not an appeal, counsel a client on the tax
> aspects of a transaction but not other aspects, or
> advise a client about a representation in which the
> primary role has been entrusted to another lawyer.
> Such arrangements are not waivers of a client's right
> to more extensive services but a definition of the
> services to be performed.

Restatement (Third) The Law Governing Lawyers § 19 cmt. c (2000).

See also Id., at § 16 cmt. c ("The lawyer's duties are ordinarily

limited to matters covered by the representation.  A lawyer who

has agreed to write a contract is not required to litigate its

validity, even though the client's general objectives may

ultimately be aided by resort to litigation."); R. Mallen & J.

Smith, Legal Malpractice § 8.2, at 774 (5th ed. 2000) ("The

liability of the attorney depends on whether a duty was breached

that was reasonably within the scope of the employment. . . . The

starting point for this analysis is the [retainer] agreement.").

According to Mrs. Levy, she did not retain Shaines to

provide advice about the "tax consequences" of the capitalization

of the corporate loans.  Nor was Shaines under the impression

that he had been hired to provide tax advice concerning the

capitalization of those loans.  Consequently, one might reasonably argue that Shaines had no duty to even ponder, much less focus on, research, and advise Mrs. Levy regarding the tax consequences of the course of action proposed by plaintiffs.  As the court observed in Fitzgerald, supra:

> The role of an attorney can be circumscribed by the terms of his or her engagement by the client.  Here the engagement was narrowly conceived by both parties and [the attorney's] role was clearly delineated.  Certainly, [the attorney] could have given advice as to the potential savings when [plaintiff] dies by disclaiming $600,000, but there was no duty to do so.  The suggestion that an attorney retained to represent an estate has an affirmative obligation to engage an executrix-wife in post-mortem estate planning fails to recognize the realities of the retention and that of a limited attorney-client relationship.

Fitzgerald v. Linnus, 336 N.J. Super. at 470-71 (emphasis supplied).  Absent an explicit (or fairly implied) understanding between Shaines and Mrs. Levy to the contrary, Shaines was no more obligated to consider, research, analyze, or offer legal advice as to the tax consequences of the proposed loan capitalization than he was to reflect on the prudence of advice rendered by a patent attorney related to intellectual property possessed by Mrs. Levy or the corporation.  Stated in simplest terms, Shaines did not, by agreeing to advise Mrs. Levy as to

15

certain specific legal issues, assume a general obligation to act as her attorney with respect to all legal issues she might confront in her personal and/or business life, even those which might have been discussed at a meeting that Shaines attended.

To prevail on their complaint, plaintiffs must demonstrate that Shaines breached some cognizable duty owed to Mrs. Levy, which breach substantially caused or contributed to the cause of her injury (the adverse tax consequences). To be sure, the affidavits of Shaines and Mrs. Levy demonstrate that Shaines was not retained to "advise [Mrs. Levy] regarding capitalizing the loan which she made in 1993." Shaines affidavit at para. 2. What remains, unclear on this record, however, is just what Shaines' legal obligations to Mrs. Levy were. Because he attended the 1993 meeting, which was held at his office, a reasonable inference might be drawn (as it is not contradicted by anything in the current record) that he was present for a purpose — probably one related to plaintiffs' loan capitalization proposal. Of course, he might just as well have been present for entirely different reasons, such as to provide legal advice regarding other unrelated agenda items. Absent clarification,

16

however, a jury might reasonably infer, based upon his prior history of representing Mrs. Levy and the fact that the meeting took place at his office, that Shaines was engaged by Levy to attend the meeting to provide pertinent services – perhaps historical information from the perspective of one schooled in estate and tax matters that Levy's accountants might require and that she might not understand or appreciate. The record is silent on this point, but one might reasonably posit on this limited record, that he attended: (1) to answer relevant questions posed by plaintiffs relating to his prior legal work for Mrs. Levy (e.g., estate planning devices that might have exhausted her unified estate and gift tax credit); or (2) to provide Mrs. Levy with general legal advice and information necessary to facilitate her own evaluation of the proposed capitalization of the loans in question, in light of her prior estate planning activity (as distinct from more narrow advice concerning the "tax consequences of the loan capitalizations," Levy affidavit at 3).

Under those circumstances, it is possible that Shaines owed (and breached) a distinct duty to advise Mrs. Levy that, by

17

virtue of her prior estate planning activity, she had already exhausted her unified estate and gift tax credit and, therefore, plaintiffs' proposal to capitalize her loans was ill-advised, since it depended (apparently) on the availability of such credits to succeed. Alternatively, of course, it is possible that there were other items on the agenda for that meeting, only some of which involved Shaines; or that he was present for entirely different reasons, unrelated to plaintiffs' proposal; or that his involvement was limited to listening to plaintiffs and making himself available in case some matter required his legal attention. It is also possible that both he and his client, Mrs. Levy, understood that when the conversation shifted to consideration of capitalizing her loans to the corporation, Shaines was not obligated (nor was he even expected) to focus on the issue, have any input into the advisability of plaintiffs' plan, volunteer any information that might be related to that plan, or render any legal advice concerning that plan. He may well have been thinking about other matters for which he was to be responsible.

At this point, the court need only observe that the record is silent on these questions.  Why Shaines attended the meeting, the nature of his role at that meeting, and the scope of his legal engagement are simply not disclosed.  So, even if the motion to dismiss is treated as one for summary judgment, it has not been shown that Shaines is entitled to judgment as a matter of law on the record as developed, because the limited and sharply focused disclaimers do not reach quite broadly enough to show that Shaines' representation (whatever it was) did not relate to the proposed loan capitalization in any actionable way.  That may be the case; this record simply falls short of establishing the necessary uncontested facts to support that conclusion.

## Conclusion

To prevail on their claim against Shaines, plaintiffs must demonstrate that they are "jointly and severally liable upon the same indivisible claim, or otherwise liable for the same injury" to Mrs. Levy stemming from the 1996 IRS audit.  RSA 507:7-f.  While it is clear from the record that Shaines neither had nor breached a duty to advise Mrs. Levy on the "tax consequences" of

19

the proposed loan capitalization, it has not been shown that he did not breach any broader duty to her that could have contributed to the cause of her injury. Because the record is silent as to why Shaines attended that 1993 meeting, and as to the nature of his role (and concomitantly the scope of his duty) at that meeting, it has not been demonstrated that Shaines is entitled to judgment as a matter of law.

Defendant's motion to dismiss (document no. 5) is denied, without prejudice, as a motion to dismiss. And, even treating it as a motion for summary judgment, as the parties wish, it is necessarily denied as well. If Shaines files a motion for summary judgment, it would be helpful if the unresolved issues identified by the court are addressed, and material facts are disclosed as either established or disputed.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 25, 2001

cc:  Steven M. Latici, Esq.
     Cheryl M. Hieber, Esq.

20